**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| **CHATEL GRAYSON**, | * | |
| *On Her Behalf and on Behalf of* | * | |
| *Four Classes of Similarly* | * | |
| *Situated Persons* | * | |
| | * | Civil No. 8:18-cv-01375-GJH |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **FREEDOM MORTGAGE** | * | |
| **CORPORATION** | * | |
| | * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

Respectfully Submitted,

*//s//Phillip R. Robinson*
Phillip R. Robinson
Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304

*Counsel for the Plaintiff and Putative*
*Class Members*

Date Submitted: May 26, 2020

i

## <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION AND BACKGROUND.....................................................................................1

II.  STANDARDS OF REVIEW…………………………………......................................................2

   A.  The Federal Removal Statute Is Strictly Construed...........................................2

   B.  Standard of Review for Removal under Federal Jurisdiction..........................3

   C.  Standard of Review for Removal under Diversity Jurisdiction........................5

III. ARGUMENT..................................................................................................................6

   A.  FEDERAL JURISDICTION EXISTS FOR CLAIMS BASED ON FEDERAL STATUTES: NONE
       OF PLAINTIFF'S CLAIMS BEFORE THE COURT IN PLAINTIFF'S AMENDED COMPLAINT
       ARISE UNDER FEDERAL LAW OR CONSTITUTE A FEDERAL CAUSE OF ACTION; A
       MERE REFERENCE TO A VIOLATION OF ONE STATUTE WHICH PARTIALLY TRIGGERS
       A VIOLATION OF A STATE STATUTE DOES NOT AMOUNT TO A SUBSTANTIAL
       FEDERAL QUESTION........................................................................................6

   B.  MS. WHITE'S PUTATIVE CLASS CLAIMS DO NOT SUBSTANTIALLY RELY ON THE
       FDCPA …………….........................................................................................10

   C.  DEFENDANTS MAY NOT AGGREGATE THE CLASS MEMBERS' DAMAGES IN ORDER
       TO MEET THE AMOUNT IN CONTROVERSY THRESHOLD FOR GENERAL DIVERSITY
       JURISDICTION FOR PLAINTIFF'S CLAIMS IN COUNT I OF THE AC..........................14

   D.  THE OBJECT OF THE ACTUAL CONTROVERSY SUBJECT TO PLAINTIFF'S CLAIMS
       UNDER COUNT II OF THE AC DOES NOT EXCEED THE JURISDICTIONAL THRESHOLD
       REQUIRED FOR DIVERSITY JURISDICTION...................................................18

IV.  CONCLUSION .............................................................................................................24

## Table of Authorities

**Cases**                                                                                   **Page(s)**

*Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d
492 (D. Md. 2004) .......................................................................... 11

*Allstate Ins. Co. v. Cherry*, 2012 WL 1425158 (D. Md. 2012) ......... 15

*Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 223 A.3d
947 (Md. 2020) ......................................................................... 11, 13

*Armstrong v. Kennedy Krieger Inst., Inc.*, 2012 WL 1554643
(D. Md. 2012) ................................................................................ 5

*Beltway Capital, LLC v. Mortg. Guar. Ins. Corp.*, 2011 WL
2066603 (D. Md. May 25, 2011) ................................................ 22-23

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719
(D. Md. 2011). .............................................................................. 10

*Britz v. Cowan*, 192 F.3d 1101 (7th Cir. 1999) ........................... 4-5, 9

*Burns v. Windsor Ins. Co.,* 31 F.3d 1092 (11th Cir. 1994) ............... 3

*Burrell v. Bayer Corp.*, 918 F.3d 372 (4th Cir. 2019). ................... 4, 9

*Cherry v. One Stop Auto Parts, Inc.*, 2019 WL 2164096 (D.
Md. 2019) ...................................................................................... 5, 9

*Covert v. Auto. Credit Corp.*, 968 F. Supp. 2d 746 (D. Md.
2013). .............................................................................................. 6

*Danfelt v. Bd. of Cty. Comm'rs of Washington Cty.*, 998 F.
Supp. 606 (D. Md. 1998) ................................................................. 8

*Delph v. Allstate Home Mortg., Inc.*, 478 F. Supp. 2d 852 (D.
Md. 2007) ........................................................................................ 5

*Eagle v. American Tel. & Tel. Co.*, 769 F.2d 541 (9th Cir.
1984) .............................................................................................. 17

*Egle Nursing Home v. Erie Insurance Group,* 981 F.Supp.
932 (D.Md. 1997) ............................................................................ 3

*Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192 (4th
Cir. 2008) ....................................................................................... 15

**Table of Authorities**

**Cases Cont.**

*Fenwick Commons Homeowners Ass'n, Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 2019 WL 1760150 (D.S.C. 2019)     23

*First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d 669 (D. Md. 2002)     23

*Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012)     11

*Forrest v. Green Tree Servicing, LLC*, 2013 WL 3270447 (D. Md. June 2013)     14

*Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir. 1992)     3, 13

*Ghalehtak v. Fay Servicing, LLC*, 2018 WL 2553570 (N.D. Cal. 2018)     4, 9

*Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001)     16, 17, 18

*Gilman v. BHS Secs., Inc.*, 104 F.3d 1418 (2d Cir. 1997)     17

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)     3

*Greer v. Crown Title Corp.*, 216 F. Supp. 2d 519 (D. Md. 2002)     8-9

*Green v. H & R Block, Inc.*, 981 F. Supp. 951 (D. Md. 1997)     15, 18

*Greenspon v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 68583 (D. Haw. 2020)     9

*Hackett v. Bayview Loan Servicing, LLC*, 2019 WL 1934672 (D. Md. 2019)     15, 18

*Healy v. Ratta*, 292 U.S. 263 (1934)     22

*Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131 (4th Cir. 2016)     10

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010)     11

*Kessler v. Home Life Ins. Co.*, 965 F. Supp. 11 (D. Md. 1997)     2

## Table of Authorities

**Cases Cont.**

*Kessler v. Nat'l Enterprises, Inc.*, 347 F.3d 1076 (8th Cir. 2003) .......... 16

*Marchese v. JPMorgan Chase Bank, N.A.*, 2013 WL 136427 (D. Md. 2013) .......... 5-6

*Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) .......... 7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016) .......... 3-4, 9

*Mid-Atl. Soaring Ass'n, Inc. v. F.A.A.*, 2006 WL 1892412 (D. Md. 2006) .......... 23

*Momin v. Maggiemoo's Int'l, L.L.C.,* 205 F.Supp.2d 506 (D.Md. 2002) .......... 15

*Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148 (4th Cir. 1994) .......... 2, 13

*Navarro v. Subaru of America Operations Corp.,* 802 F. Supp. 191 (N.D. Ill. 1992) .......... 3

*Ndzerre v. Liberty Power Corp., LLC*, 318 F. Supp. 3d 761 (D. Md. 2018) .......... 15, 18

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) .......... 2, 9

*Ocean City Taxpayers for Soc. Justice v. Mayor & City Council of Ocean City*, 2015 WL 7567722 (D. Md. 2015) .......... 22

*Olson v. Wells Fargo Bank, N.A.*, 961 F. Supp. 2d 1149 (C.D. Cal. 2013) .......... 4, 9

*Patton v. Wells Fargo Fin. Maryland, Inc.*, 85 A.3d 167 (Md. 2014) .......... 20

*Peters v. Alaska Tr., LLC*, 305 F. Supp. 3d 1019 (D. Alaska 2018) .......... 2

*Phelps v. Herro*, 137 A.2d 159 (Md. 1957) .......... 21

## Table of Authorities

**Cases Cont.**

*Porsche Cars N. Am., Inc. v. Porsche.net,* 302 F.3d 248 (4th Cir.2002) ... 6

*Portero Hill Cmty. Action Comm. v. Housing Auth.*, 410 F.2d 974 (9th Cir. 1969) ... 17

*Preciado v. Ocwen Loan Servicing*, 2011 WL 977819, (C.D. Cal. 2011) ... 4, 9

*Pressl v. Appalachian Power Co.*, 842 F.3d 299 (4th Cir. 2016) ... 7

*Pruell v. Caritas Christi*, 645 F.3d 81 (1st Cir. 2011) ... 16

*Richardson v. Phillip Morris Inc.* 950 F. Supp. 700 (D. Md. 1997) ... 2

*Riley v. Dozier Internet Law, PC*, 371 F. App'x 399 (4th Cir. 2010) ... 23

*Sizer v. Oshinnaiye*, 2020 WL 263493 (D. Md. 2020) ... 7

*Sellers v. O'Connell*, 701 F.2d 575 (6th Cir. 1983) ... 17

*Skokomish Indian Tribe v. France*, 269 F.2d 555 (9th Cir. 1959) ... 17

*Snyder v. Harris*, 394 U.S. 332 (1969) ... 16-17

*State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 92 A.3d 400 (Md. 2014) ... 20-21

*Sutton v. Dep't of Human Servs.*, 2019 WL 4447379 (D. Md. 2019) ... 6

*Taylor v. Giant Food,* 2004 WL 2191715 (D. Md. 2004) ... 2

*Travelers Prop. Cas. v. Good*, 689 F.3d 714 (7th Cir. 2012) ... 16

*Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055 (6th Cir. 2008) ... 7

*Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d 561 (D. Md. 2000) ... 14

# Table of Authorities

**Statutes**

15 U.S.C.A. § 1692 — *passim*

28 U.S.C.A. § 1331 — *passim*

28 U.S.C. § 1332 — *passim*

COM. LAW § 12-704 — 12

COM. LAW § 12-1001, *et seq.* — 12

COM. LAW § 12-1014 — 12

COM. LAW § 14-201 *et seq.* — *passim*

COM. LAW § 13-101 *et seq.* — *passim*

COM. LAW § 13-301(14)(xxxiii)-(xxxiv) — 12

REAL PROP. § 7-502 — 12

**Legislation**

2018 Maryland Laws Ch. 731 (H.B. 1634) — 12

**Rules**

Fed. R. Civ. P. 8 — 15

**Other Authorities**

Wright, Miller & Cooper, Federal Practice and Procedure 3rd, § 3702 — 14

IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| **MARCELINE WHITE** | * | |
| *On behalf of herself individually* | * | |
| *and similarly situated persons* | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Case No: 1:20-cv-1259-RDB |
| | * | |
| **NEWREZ LLC, d/b/a SHELLPOINT** | * | |
| **MORTGAGE SERVICING** *et al.* | * | |
| | * | |
| **Defendants** | * | |
| | * | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO REMAND**

Plaintiff Marceline White ("Plaintiff" or "Ms. White") by her undersigned counsel does hereby move to remand this case to the Circuit Court for Anne Arundel County, Maryland and says in support:

## I.  INTRODUCTION AND BACKGROUND

Ms. White's Amended Class Action Complaint (ECF. 7) which was pending in the Circuit Court for Anne Arundel County, Maryland at the time of the Defendants' removal of this action (ECF. 1-3): (i) presents no Federal claim or cause of action and (ii) does not meet the sums necessary for the Court's limited diversity jurisdiction.  Further, as a removing party, NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") failed to meets its burden to identify and disclose to the Court the principal place of business of each of its members which is necessary to determine if complete diversity exists.

By their removal, the Defendants seek to impermissibly expand this Court's jurisdiction to swallow an entire class of small-dollar, state law claims without a basis to do so.  The Defendants

have no right to expand this Court's limited jurisdiction, and while they may fear having their unlawful and deceptive business practices addressed by the state courts, that fear is not a basis to remove this action and it should be remanded to the Circuit Court for Anne Arundel County, Maryland.

The Ninth Circuit has aptly addressed this question and explained the threat posed by Defendants' removal as follows:

> State courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes. Exercising federal question jurisdiction over any state law claim that references a federal consumer protection statute would "herald[ ] a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319, 125 S.Ct. 2363.

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012).  *Peters v. Alaska Tr., LLC*, 305 F. Supp. 3d 1019, 1028 (D. Alaska 2018)(*same*).

## II.   STANDARD OF REVIEW

### A.  The Federal Removal Statute Is Strictly Construed

White is entitled to the benefit of any doubts with respect to removal, and a very heavy burden is placed upon Defendants to meet the requisites of removal. *Richardson v. Phillip Morris Inc.* 950 F. Supp. 700 (D. Md. 1997). It is well settled that the removing party bears the burden of proving proper removal. *See, e.g., Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994). As noted in *Taylor v. Giant Food,* 2004 WL 2191715 (D. Md. 2004) (slip opinion), "the court must 'strictly construe the removal statute and must resolve all doubt in favor of remanding the case to state court' indicative of the reluctance of federal courts 'to interfere with matters properly before a state court.'"  *Id.* at 1 (citing *Richardson v. Phillip Morris Inc.*, 950 F.Supp 700, 701-02 (D. Md. 1997); *Cf Kessler v. Home Life Ins. Co.,* 965 F. Supp. 11, 12 (D. Md. 1997) (noting that where federal removal statute is not satisfied, remand is mandatory).

In *Egle Nursing Home v. Erie Insurance Group,* 981 F.Supp. 932 (D.Md. 1997), Judge

Young explained that:

> The removal jurisdiction of the federal courts is to be "scrupulously confined," and "[i]f federal [removal] jurisdiction is doubtful, a remand is necessary." This strict policy against removal and for remand protects the sovereignty of state governments and state judicial power.  The party seeking removal bears the burden of stating facts in its notice of removal demonstrating an entitlement to removal.

*Id.* at 933, quoting *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994).

*See also Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) ("Federal courts are courts

of limited jurisdiction. While a defendant does have a right, given by statute, to remove in certain

situations, plaintiff is still the master of his own claim….[R]emoval statutes are construed

narrowly: where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor

of remand."); *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must

be rejected if there is <u>any doubt</u> as to the right of removal in the first instance.")(emphasis added);

and *Navarro v. Subaru of America Operations Corp.,* 802 F. Supp. 191, 193 (N.D. Ill.

1992)("Questions of removal are accordingly strictly construed against federal jurisdiction … and

ambiguities are resolved against removal when doubt exists as to jurisdiction.").

**B.  Standard of Review for Removal under Federal Jurisdiction**

"The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States."  28 U.S.C.A. § 1331. "This provision for

federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created

by federal law."  *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312

(2005).

Federal jurisdiction pursuant to 28 U.S.C.A. § 1331 may also exist in a limited, narrow

number of other circumstances beyond the actual causes of action before the Court.  In *Merrill*

3

*Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569–70 (2016) the Court

recognized that

> even when "a claim finds its origins" in state law, there is "a special and small
> category of cases in which arising under jurisdiction still lies."…As this Court has
> explained, a federal court has jurisdiction of a state-law claim if it "necessarily
> raise[s] a stated federal issue, actually disputed and substantial, which a federal
> forum may entertain without disturbing any congressionally approved balance" of
> federal and state power.

*Id.* (citations omitted).

> However,

> A federal question is not "necessarily" raised under § 1331 unless it is essential to
> resolving a state-law claim, meaning that "*every* legal theory supporting the claim
> requires the resolution of a federal issue." *Dixon*, 369 F.3d at 816. If, on the other
> hand, each of the Burrells' claims is supported by a state-law theory that does not
> require recourse to federal law, then that claim does not "arise under" federal law
> — even if the Burrells have alleged an alternative federal-law theory that also could
> prove liability. *See Pressl*, 842 F.3d at 304; *Flying Pigs*, 757 F.3d at 182. In other
> words, so long as "even one theory" for each of the Burrells' claims
> does *not* require "interpretation of federal law," resolution of the federal-law
> question is not necessary to the disposition of their case. *Pressl*, 842 F.3d at 304.

*Burrell v. Bayer Corp.*, 918 F.3d 372, 383 (4th Cir. 2019).

Multiple courts have rejected efforts to expand federal question jurisdiction to every state

law claim that references or partially relies upon the portions of Fair Debt Collection Practices Act

for liability under the state causes of action. *See e.g. Olson v. Wells Fargo Bank, N.A.*, 961 F. Supp.

2d 1149, 1150 at FN 2 (C.D. Cal. 2013)(rejecting notion of federal question jurisdiction based on

violations of state law which incorporate the FDCPA); *Preciado v. Ocwen Loan Servicing*, No.

CV 11-1487 CAS VBKX, 2011 WL 977819, at *2 (C.D. Cal. Mar. 18, 2011)(collecting cases

under California law based on violations of the FDCPA do not created federal question

jurisdiction); *Ghalehtak v. Fay Servicing, LLC*, No. 18-CV-02306-PJH, 2018 WL 2553570, at *1

(N.D. Cal. June 4, 2018)(same).   *Compare Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir.

4

1999)("a state cannot expand federal jurisdiction by deciding to copy a federal law. David P. Currie, *Federal Jurisdiction in a Nutshell* 101–02 (3d ed.1990). If it incorporates federal law into state law and then gets the federal law wrong, it has made a mistake of state law"); *Cherry v. One Stop Auto Parts, Inc.*, No. CV RDB-18-3054, 2019 WL 2164096, at *4 (D. Md. May 17, 2019) ("Courts have found that alleging a violation of a state statute that incorporates the Truth in Lending Act does not create a substantial federal question").

### C.  Standard of Review for Removal under Diversity Jurisdiction

A removing party bears the burden of showing that the district court has jurisdiction over the action. *Strawn v. AT & T Mobility, LLC,* 530 F.3d 293, 296 (4th Cir.2008); *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 1994 (4th Cir.1994). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." *Mulcahey,* 29 F.3d at 151.

*Armstrong v. Kennedy Krieger Inst., Inc.*, CIV. WDQ-11-3380, 2012 WL 1554643, *3 (D. Md. Apr. 30, 2012).   In *Armstrong*, this Court remanded the case because it did not involve "a substantial federal question" and issues of state laws predominated. *Id*. at *5.

It has also been explained that

[t]he Fourth Circuit has not determined the exact standard to be applied in ascertaining the amount in controversy in diversity cases. *Momin v. Maggiemoo's Int'l, L.L.C.,* 205 F.Supp.2d 506, 509 n. 2 (D.Md.2002). However, this Court has reasoned that

> [i]n determining whether an amount in controversy is sufficient to confer jurisdiction, courts apply one of two legal standards depending on whether the damages are specified or unspecified in the complaint. Where a plaintiff claims a specific amount in damages that is less than $ 75,000, removal is proper only if the defendant can prove to a legal certainty that the plaintiff would actually recover more than that if she prevailed. If, on the other hand, a plaintiff's complaint does not allege a specific amount in damages, a defendant need only prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.

*Momin,* 205 F.Supp.2d at 509-10 (internal citations omitted).

*Delph v. Allstate Home Mortg., Inc.*, 478 F. Supp. 2d 852, 854 (D. Md. 2007).  *See also Marchese*

5

*v. JPMorgan Chase Bank, N.A.*, CIV.A. GLR-12-1480, 2013 WL 136427, *4 (D. Md. Jan. 8, 2013)("[Plaintiff] could have capped the request for trebled damages under $75,000" to avoid the threshold to trigger this Court's jurisdiction under 28 U.S.C. § 1332).

"[J]urisdiction is assessed as of the time suit was filed. *Porsche Cars N. Am., Inc. v. Porsche.net,* 302 F.3d 248, 255–26 (4th Cir.2002) (citing *Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991))." *Marchese*, 2013 WL 136427, *6.  In addition,

> the Fourth Circuit has repeatedly held "[i]f a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court, through removal, it is the defendant who carries the burden of alleging in his notice of removal, and if challenged, demonstrating the court's jurisdiction over the matter." *Strawn,* 530 F.3d at 297 (citing *Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 200 (4th Cir.2008)). By ensuring that removal occurs only where jurisdictional facts supporting it are properly pled and sufficiently demonstrated, courts can provide litigants with certainty and predictability concerning what court has jurisdiction over their claims. Therefore, where "federal jurisdiction is doubtful, a remand is necessary." *Mulcahey,* 29 F.3d at 151.

*Covert v. Auto. Credit Corp.*, 968 F. Supp. 2d 746, 751 (D. Md. 2013).

## III.   ARGUMENT

### A. FEDERAL JURISDICTION EXISTS FOR CLAIMS BASED ON FEDERAL STATUTES: NONE OF PLAINTIFF'S CLAIMS BEFORE THE COURT IN PLAINTIFF'S AMENDED COMPLAINT ARISE UNDER FEDERAL LAW OR CONSTITUTE A FEDERAL CAUSE OF ACTION; A MERE REFERENCE TO A VIOLATION OF ONE STATUTE WHICH PARTIALLY TRIGGERS A VIOLATION OF A STATE STATUTE DOES NOT AMOUNT TO A SUBSTANTIAL FEDERAL QUESTION

It is true that this Court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331.  *See also Sutton v. Dep't of Human Servs.*, No. CV RDB-19-0542, 2019 WL 4447379, at *2 (D. Md. Sept. 17, 2019)("To determine whether a plaintiff's claims 'arise under' the laws of the United States, this Court adheres to the 'well-pleaded complaint rule,' which requires an assessment of the allegations

of the Complaint, rather than potential defenses. *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 177 (4th Cir. 2017); *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004)").

Keying upon this alternative basis for this Court's jurisdiction, Defendants claim that White's Amended Complaint will require resolution and determination of significant, disputed issues arising under federal law. Notice of Removal at ¶¶ 21, 23, 24.  Defendants offer no facts or basis whatsoever to support their conclusory statements of counsel.  *Id.*  However, the binding precedent of this Circuit simply does recognize the unsupported conclusion.  Since the well-pled Amended Complaint does not state any federal cause of action, the only basis to support federal question jurisdiction would be if

> the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, ––– U.S. ––––, 133 S.Ct. 1059, 1065, 185 L.Ed.2d 72 (2013); <u>see also</u> <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 312–14, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Federal jurisdiction will lie only if a case meets all four requirements. <u>Gunn</u>, 133 S.Ct. at 1065.

*Pressl v. Appalachian Power Co.*, 842 F.3d 299, 303 (4th Cir. 2016).  *See also Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 552 (D. Md. 2019), <u>as amended</u> (June 20, 2019), <u>aff'd,</u> 952 F.3d 452 (4th Cir. 2020); *Sizer v. Oshinnaiye*, No. CV ELH-19-569, 2020 WL 263493, at *12 (D. Md. Jan. 17, 2020)("'Simply listing federal statutes in the complaint does not confer federal question jurisdiction....' *Swanson v. Style Source, Inc.*, 7:18-cv-63-BO, 2018 WL 4604525, at *2 (E.D.N.C. Sept. 25, 2018)").

In this matter, the Defendants cannot claim that White's discussion of a Federal Statute that triggers a part of claim arising under a state statute qualifies as a "substantial" federal issue in this case.  *Compare Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1063 (6th Cir. 2008)*("*A contrary result would effectively shift the burden of establishing federal question

jurisdiction in removal cases away from defendants by requiring plaintiffs to affirmatively establish the *lack* of such jurisdiction. Any complaint that included even a passing mention of federal law would, so long as the facts could possibly have supported an undeclared federal claim, be subject to the expensive and delaying removals that § 1447(c) was designed to discourage. *See Martin,* 546 U.S. at 140, 126 S.Ct. 704"); *Greer v. Crown Title Corp.*, 216 F. Supp. 2d 519, 523 (D. Md. 2002)("The fact that the complaint references, or is in some part based upon, federal law does not mean that this case 'arises under' federal law as contemplated by § 1331"); *Danfelt v. Bd. of Cty. Comm'rs of Washington Cty.*, 998 F. Supp. 606, 608 (D. Md. 1998)("for 'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.' *Merrell Dow,* 478 U.S. at 813").

*Greer* is illustrative that the mere mention of a federal statute and duty does not convert a complaint based upon state law claims to create a "substantial" question of federal law.   Judge Nickerson summarized the allegations and argument before him in *Greer* as follows:

> Throughout the complaint, Plaintiff repeatedly refers to the alleged sham entities as "affiliated business arrangements," as that term is defined in the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. Indeed, Plaintiff mentions RESPA explicitly in two paragraphs of the complaint. Complaint at ¶¶ 19, 50. Furthermore, Plaintiff alleges that Defendants violated the Maryland Consumer Protection Act by, *inter alia,* conspiring to violate RESPA's prohibitions against charging unearned fees in connection with mortgage closings. *Id.* at ¶ 50. Therefore, Defendants argue, the Court cannot determine an essential element of Plaintiff's consumer protection claims without interpreting and applying RESPA's definition of affiliated business arrangements, as well as the statute's prohibitions against certain activities of such arrangements….

> Plaintiff uses the term "affiliated business arrangement" over a dozen times throughout the complaint, and he explicitly defines the term by reference to RESPA in the predicate facts of the complaint. Despite these repeated references, however, Plaintiff's recovery does not turn on whether the alleged entities meet RESPA's definition of affiliated business arrangements, or even whether Defendants violated provisions of RESPA. As discussed above, the Complaint alleges that Defendants may be liable under Maryland's Consumer Protection Act for "unfair or deceptive" practices independent of any RESPA violations.

*Greer*, 216 F. Supp. 2d at 522-523.

As shown *infra* at § III.B, White's claim under the MCDCA does not raise a substantial federal question since the FDCPA only involves one element of her MCDCA claim and does not override White's alternative claims under the MCPA or the other elements of her MCDCA claims. In light of the fact that every theory advanced by White does not require the "interpretation of federal law," resolution of the federal-law question is not necessary to the disposition of her case. *Burrell,* 918 F.3d at 383.  This result is in accord with multiple other decisions applying state law claims that incorporate a portion of the FDCPA as violations of the well-pled state law claims. *Nevada*, 672 F.3d at 676; *Olson*, 961 F. Supp. 2d at 1150 at FN 2; *Preciado*, 2011 WL 977819, at *2; *Ghalehtak,* 2018 WL 2553570, at *1; *Greenspon v. Deutsche Bank Nat'l Tr. Co.*, No. CV 19-00516 JAO-KJM, 2020 WL 68583, at *5 (D. Haw. Jan. 7, 2020)("contrary to Defendants' arguments, exercising federal jurisdiction over a state-law claim that references a federal consumer protection statute could shift traditionally state cases into federal court and disturb the balance of judicial responsibilities").  This result is also consistent with this Court's analysis of similar issues arising between state-law claims lending claims that may relate or involve claims under the Truth in Lending Act.   *Cherry*, 2019 WL 2164096.  Plaintiff's argument also recognizes that the Maryland General Assembly has no authority by enacting amendments to the MCDCA to create federal question jurisdiction.  *Britz*, 192 F.3d at 1103. Finally, Congress could have elected to preempt all state debt collection laws by the FDCPA but it expressly chose not do so.  15 U.S.C.A. § 1692n.  That express election demonstrates that Congress intended a balance between federal FDCPA and similar state laws like the MCDCA.  *Merrill Lynch*, 136 S. Ct. at 1569–70.

Based on the foregoing argument (which also incorporates § III.B *infra*), this Court does not have federal question jurisdiction over this action, and it should be remanded to the Circuit Court for Anne Arundel County, Maryland.

### B. Ms. White's Putative Class Claims Do Not Substantially Rely on the FDCPA

In Count I of her Amended Complaint (ECF. 7), Ms. White raises putative class claims against the Defendants for their violations of the MCDCA and MCPA. The MCDCA and MCPA are state law claims. Recognizing that White does not pursue any Federal statutory claims in her Amended Complaint, Defendants represent to the Court that White's "allegations arise under federal law because they necessarily and substantially depend on this court making a binding determination of whether there has been a violation of the federal Fair Debt Collections Practices Act and if so, so declaring in its judgment." Notice of Removal (ECF. 1) at ¶ 23. As shown *supra*, Defendants are wrong. In addition, Defendants' attempt to suggest the MCDCA and MCPA are allegedly synonymous causes of action are disingenuous.

First, the FDCPA applies only to a narrow group of debt collectors qualifying under 15 U.S.C.A. § 1692a(6). "While the FDCPA is a somewhat complex and technical regulation of debt collector practices, we conclude that it generally does not regulate creditors when they collect debt on their own account and that, on the facts alleged by the plaintiffs, Santander became a creditor when it purchased the loans before engaging in the challenged practices." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 134 (4th Cir. 2016), aff'd, 137 S. Ct. 1718 (2017). *See also Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 724–25 (D. Md. 2011). In contrast, the scope of the MCDCA is broader and applies to any "person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Com. Law § 14-201(b).

Second, the FDCPA is a strict liability statute whereas the MCDCA is not. *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004). 15 U.S.C.A. § 1692k allows for the recovery of damages under the FDCPA based upon the failure to comply "with any provision of [the FDCPA]." Whereas, the MCDCA only permits "damages proximately caused by the violation." COM. LAW § 14-203. In addition, the FDCPA permits the recovery of statutory damages (15 U.S.C.A. § 1692k), but the MCDCA does not (COM. LAW § 14-203).

Third, the FDCPA establishes a bona fide error defense in the text of the statute. 15 U.S.C.A. § 1692k(c). Whereas the MCDCA has no such defense. *See generally* COM. LAW § 14-201, *et seq. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1622, (2010).

Fourth, principles of vicarious liability may be imputed under the MCDCA to the collector's client. *Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 223 A.3d 947, 969 (2020). However, vicarious liability may not exist under the FDCPA unless the creditor also qualifies as a debt collector itself pursuant to 15 U.S.C.A. § 1692a(6). *Fontell v. Hassett*, 870 F. Supp. 2d 395, 412 (D. Md. 2012).

Finally, White's MCDCA claim under COM. LAW § 14-202(11), that forms the Defendants' wrongheaded theory, provides, "In collecting or attempting to collect an alleged debt a collector may not….[e]ngage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act." *Id.*[1] In contrast, COM. LAW § 14-202(11) <u>did not</u> (i) borrow the

---

[1]     In addition, the specific portion of the FDCPA that applies to part of White's MCDCA claim provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section…The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.A. § 1692f(1).

definition of "debt collector" under the FDCPA in 15 U.S.C.A. § 1692a(6), (ii) borrow the FDCPA's bona fide error defense, and (iii) borrow the FDCPA's statutory damage element in 15 U.S.C.A. § 1692k.

The General Assembly enacted COM. LAW § 14-202(11) as part of the FINANCIAL CONSUMER PROTECTION ACT OF 2018, 2018 Maryland Laws Ch. 731 (H.B. 1634) for the express purpose of "prohibiting a certain collector from engaging in…certain conduct under certain circumstances; specifying the purpose of certain provisions of law." *Id* at Preamble.  In addition, the General Assembly intended for 2018 Maryland Laws Ch. 731 to counter "[r]ecent federal action to roll back certain financial consumer protections may prove detrimental to Marylanders." *Id.*  These stated purposes demonstrate the strong state interest at issue related to White's claims to protect Maryland consumers. *Id.*

There is no substantial Federal interest at stake under the FDCPA by White's COM. LAW § 14-202(11) claim just because the statute incorporates the FDCPA.  Rather, White's claim is based on state law that merely incorporates the Federal statute.  Accepting the Defendants' expansive reading of COM. LAW § 14-202(11) in its Notice of Removal would lead to this Court's Federal question jurisdiction over multiples of other state statutes that incorporate similar but not identical Federal statutes. *See e.g.* COM. LAW § 12-704 (establishing a violation of the Federal Equal Credit Opportunities Act may constitute a claim under the Maryland Equal Credit Opportunity Act); COM. LAW § 12-1014 (incorporating TILA to violations under the Credit Grantor Closed End Credit Provisions); COM. LAW § 12-1001, *et seq.*; COM. LAW § 13-301(14)(xxxiii)-(xxxiv)(making violations of the Federal Military Lending Act and Servicemembers Civil Relief Act violations of the MCPA); REAL PROP. § 7-502 (making violations of the federal code of regulations by mortgage assistance relief service providers and violation of state law).  Such a reading is consistent with

12

the limited jurisdiction of this Court and Maryland's sovereignty to have parties like the Defendants subject to its laws in Maryland courts. *Mulcahey,* 29 F.3d at 151; *Burns,* 31 F.3d at 1095; *Gaus,* 980 F.2d at 566.

White's claims in Count I are also based on the Defendants' violations of the MCPA. AC at ¶¶ 53, 58-66.

> The CPA serves as a primary source of state oversight and regulation of debt collection activities. "Consumer credit" and "consumer debts" are express subjects of the CPA. *See* CL § 13-101(d) (defining "consumer credit" and "consumer debt" as "credit, debts or obligations ... which are primarily for household, family, or agricultural purposes"). The CPA makes it unlawful to "engage in any unfair, abusive, or deceptive trade practice" in "[t]he extension of consumer credit" or "[t]he collection of consumer debts." CL §§ 13-303(4); (5).

*Andrews*, 223 A.3d at 961.

In their Notice of Removal the Defendants misstate White's MCPA claim and misstate to the Court that the claims are solely presented as *per se* MCDCA violations. Notice of Removal at ¶ 22 (citing AC at ¶ 58). Yet, while White did plead the Defendants' liability under the MCPA pursuant to COM. LAW § 13-301(14)(iii), White also pled alternative MCPA liability against the Defendants pursuant to COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5). *See* AC at ¶¶ 53, 59-66. In addition, the Defendants' Notice of Removal fails to address White's alternative liability claims under the MCPA against Fannie Mae on theories of vicarious liability and/or *respondent superior*. AC at ¶ 67. The Defendants' Notice of Removal simply omits and conceals these alternative claims under the MCPA. None of these alternative MCPA claims rely in part or whole on the FDCPA and therefore there can be no colorable claim that a question of substantial federal question of those alternative grounds is at issue in this case.

Based on the foregoing additional argument, this Court does not have federal question jurisdiction over this action and it should be remanded to the Circuit Court for Anne Arundel County, Maryland.

### C. DEFENDANTS MAY NOT AGGREGATE THE CLASS MEMBERS' DAMAGES IN ORDER TO MEET THE AMOUNT IN CONTROVERSY THRESHOLD FOR GENERAL DIVERSITY JURISDICTION FOR PLAINTIFF'S CLAIMS IN COUNT I OF THE AC

The Defendants generally bear the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount of $75,000. *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d 561, 565 (D. Md. 2000) (citing *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir.1996); Wright, Miller & Cooper, Federal Practice and Procedure 3rd, § 3702, n. 5).[2] To meet this burden the Defendants must proffer actual evidence (like that in support of summary judgment) establishing it is more likely than not that the amount in controversy exceeds that sum; conclusory allegations by the

---

[2]    The Defendants also have to put forward evidence to show the parties are completely diverse. *Forrest v. Green Tree Servicing, LLC*, No. CIV.A. ELH-13-1525, 2013 WL 3270447, at *1 (D. Md. June 25, 2013).  The citizenship of Defendant Shellpoint as an LLC is based on citizenship of each of its members. *Id.* at *3.  In their Notice of Removal, the Defendants identified the state of incorporation for its members but did not identify the principal place of business for each of Shellpoint's purported members.  *See* Notice of Removal at ¶9 (failing to identify the principal place of business for Shellpoint Partners LLC, NRM Acquisition LLC, NRM Acquisition LLC II, and New Residential Mortgage LLC).  Without providing the Court with this information, the Defendants' claim of complete diversity is not supported by the Notice of Removal and the Defendants have not met their burden to show that the Court has property subject matter jurisdiction under 28 U.S.C. § 1332. *Id.* at *5.  For these additional reasons the case should be remanded to the state court.

defendant are *not* sufficient to overcome the strong presumption against removal jurisdiction. *Momin*, 205 F. Supp. 2d at 510.[3]

It is not appropriate to aggregate the value of the plaintiff class members' claims in determining the amount in controversy for purposes of establishing general federal diversity pursuant to 28 U.S.C. § 1332(a).

> It has long been the rule that multiple plaintiffs may not add together "separate and distinct demands, unite[d] for convenience and economy in a single suit" to satisfy an amount–in–controversy requirement. *Zahn v. International Paper Co.,* 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973)(internal quotations omitted); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In *Zahn,* the Court specifically held that in a Fed.R.Civ.P. 23(b)(3) class action, every member of the plaintiff class must satisfy the amount–in–controversy requirement. 414 U.S. at 301, 94 S.Ct. at 511; *but see Gilman,* 896 F.Supp. at 509, n. 5.

*Green v. H & R Block, Inc.*, 981 F. Supp. 951, 953 (D. Md. 1997).  *See also Ndzerre v. Liberty Power Corp., LLC*, 318 F. Supp. 3d 761, 764 (D. Md. 2018)("Defendants invoking § 1332(a) cannot aggregate class members' damages to meet the $ 75,000 amount in controversy requirement."); *Hackett v. Bayview Loan Servicing, LLC*, No. 8:18-CV-01286-PX, 2019 WL 1934672, at *2 (D. Md. Apr. 30, 2019).

---

[3]     Allegations in a notice of removal are governed by the same standards as allegations in a complaint under Fed. R. Civ. P. 8(a). *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65). Rule 8(a) requires allegation of facts – legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. at 677-78 (2009). Under this standard, "the facts showing the existence of subject matter jurisdiction 'must be affirmatively alleged in the complaint.'" *Allstate Ins. Co. v. Cherry*, 2012 U.S. Dist. LEXIS 57157, 13, 2012 WL 1425158 (D. Md. Apr. 23, 2012) (quoting *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936) (holding that "the party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleadings the facts essential to show jurisdiction")), cert. denied, 528 U.S. 1155 (2000))).

Other circuits are also in accord with the Plaintiff's argument.  *See e.g. Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012)(only permitting jurisdiction by aggregating putative class member claims in a common fund case where there is a "single pool of money to be allocated among the plaintiffs" such as a single sum of insurance proceeds available to a class of similar individuals);  *Pruell v. Caritas Christi*, 645 F.3d 81, 84 (1st Cir. 2011)("It follows that, as Judge Posner stated, where the 'district court never had jurisdiction over the claim of the class representative ... it had no jurisdiction over the class action either even if the claims of some of the members of the class were within its jurisdiction.' *Denberg v. U.S. R.R. Ret. Bd.,* 696 F.2d 1193, 1197 (7th Cir.1983) (en banc), *cert. denied,* 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984)"); *Kessler v. Nat'l Enterprises, Inc.*, 347 F.3d 1076, 1081 (8th Cir. 2003)("Although the class members' claims satisfy the jurisdictional amount in the aggregate, it appears to a legal certainty (whether considered when the original complaint was filed or now) that none of the named class members' claims satisfies the jurisdictional amount individually. As a result, we have no choice but to remand this case to the district court, with directions to remand it to the state court from which it was removed. *See* 28 U.S.C. § 1447(c)"); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001), holding modified (on other grounds) by *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005)("a class action, when filed, includes only the claims of the named plaintiff or plaintiffs. The claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23. There thus cannot be "original jurisdiction" within the meaning of subsection (a) over the claims of unnamed class members and there is therefore no supplemental jurisdiction either").

In *Snyder v. Harris*, 394 U.S. 332 (1969), the Supreme Court rejected the argument that amendments to Rule 23 had eliminated the non-aggregation rule for class actions. It reaffirmed the

well-settled rule that aggregation to meet the amount-in-controversy requirement is permissible only "(1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* at 335.

In the context of class actions, aggregation is only appropriate where the defendant "owes an obligation to the group of plaintiffs as a group and not to individuals severally." *Gibson*, 261 F.3d at 944 (citations omitted). The paradigmatic case in which aggregation is allowed is where the claims involve "a single indivisible res" and concern "matters that cannot be adjudicated without implicating the rights of everyone involved with the res." *Id.* (citations omitted).[4] By contrast, aggregation is not permissible where the class members' claims "are each cognizable, calculable, and correctable individually," even though they might rest on a "common legal theory." *Id.* at 945. *See also Gilman v. BHS Secs., Inc.*, 104 F.3d 1418, 1423 (2d Cir. 1997) (refusing to aggregate disgorgement claims that "could be adjudicated on an individual basis"); *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983) (refusing to aggregate where each plaintiff sought a "fixed sum"); *Portero Hill Cmty. Action Comm. v. Housing Auth.*, 410 F.2d 974, 978 (9th Cir. 1969) (refusing to aggregate claims of tenants in a housing project because their claims derived from individual leases).

---

[4]    *See also Eagle v. American Tel. & Tel. Co.,* 769 F.2d 541, 545-46 (9th Cir. 1984) (holding that the claims of a corporation's shareholders for breach of fiduciary duty could be aggregated as a "common and undivided interest" because shareholders cannot normally bring suit individually, but must instead institute a derivative suit on behalf of the corporation as a whole); *Skokomish Indian Tribe v. France*, 269 F.2d 555, 559 (9th Cir. 1959) (allowing an Indian tribe to aggregate its quiet title actions against multiple defendants because the land at issue had been given to the tribe in a single treaty, the land was contiguous, and all of the defendants derived title from a single source).

Based on these principles, the Ninth Circuit held in *Gibson* that the claims of multiple plaintiffs against a car manufacturer seeking the disgorgement of profits from "defective electrocoat finish techniques" could not be aggregated, because the claims could be "separated into discrete and quantifiable sums attributable to each vehicle sold" and could be "traced to particular transactions involving individual plaintiffs, each of whom can sue [the manufacturer] for disgorgement of this per-vehicle profit." *Gibson*, 261 F.3d at 945.

Here, White's individual claim in Count I concerns a single unfair and deceptive convenience fee in the amount of $15 imposed upon her without the right to do so. *See e.g.* AC at ¶ 30.  In Count I she seeks to sum of $75,000 "on a aggregated basis for the Plaintiff and Maryland Convenience Fee Class" and "on a aggregated basis for the Plaintiff and Fannie Mae Subclass." Prayer for Relief at ¶¶ B-C (Page 24-25).

Defendants' Notice of Removal claims the aggregated amounts of controversy for White the putative class members satisfies the amount in controversy for Count I of the AC.  *See* Notice of Removal at ¶ 12.  However, Defendants are not permitted to obtain this Court's diversity jurisdiction based on the plaintiff's and class members' aggregated sum in controversy.  *Green*, 981 F. Supp. at 953; *Ndzerre,* 318 F. Supp. 3d at 764; *Hackett*, 2019 WL 1934672, at *2.

Based on the foregoing additional argument, the amount in controversy requirement under Count I has not been met and this action should be remanded to the Circuit Court for Anne Arundel County, Maryland.

D. THE OBJECT OF THE ACTUAL CONTROVERSY SUBJECT TO PLAINTIFF'S CLAIMS UNDER COUNT II OF THE AC DOES NOT EXCEED THE JURISDICTIONAL THRESHOLD REQUIRED FOR DIVERSITY JURISDICTION

As a final shot in their strained quiver seeking to avoid the state court's review of their activities, the Defendants claim that the Court has diversity jurisdiction over White's individual

declaratory judgment claim in Count II of her AC.[5]   To accomplishment this sum necessary Defendants claim:

> The value of the object of this piece of this litigation, which is the amount of interest, costs, fees, and other charges that will be accrued over the life of the White Loan absent Plaintiff's requested declaratory relief, exceeds $75,000. Indeed, the amortization from the date of lawsuit filing through the maturity of White's loan reflects that future interest payments will total $102,736.02.

Not. of Rem. at ¶ 13.

However, the controversy addressed by White's individual declaratory judgment claim does not concern theoretical, future errors by the Defendants.  Rather, White's declaratory judgment claim concerns a limited controversy that arose in just the last few months (i.e. from March 2020 through May 2020) and not through the maturity of White's loan:

> 34.  Fannie Mae's and Shellpoint's violations of CLEC are not as a result of any bona fide error or computation since they are express violations of the prohibitions established in CLEC itself.  Upon information and belief, the errors are directly the result of NRZ's business practices in relation to the MSRs it has acquired from another to churn all sorts of non-bona fide fees and advances which it will recoup under its business model since these fees and "are almost always 'top of the waterfall' in the event of a property sale."  Fannie Mae and Shellpoint received additional notice of their errors in relation to the White Loan by certified, restricted mail to its authorized persons to receive such correspondence on April 22, 2020 (New Rez) and April 20, 2020 (Fannie Mae) and each have taken no action to correct their errors identified in White's original complaint.
>
> 35.  White disputed the fees and charges imposed and collected by Shellpoint on Fannie Mae's behalf in written correspondence to Shellpoint dated March 18, 2020.  Shellpoint received this correspondence on March 27, 2020.  Shellpoint took no action in the ten days since receipt of White's notice to it to correct its errors and as of the filing of this Amended Class Action Complaint.
>
> 36.  As a result of Fannie Mae's and Shellpoint's violations of CLEC there is a controversy between them and White about the sums she owes on her loan.

---

[5]   Once again, the Defendants have not shown complete diversity exists since they have concealed from the Court the principal place of business for each of Shellpoint's members.  *See* FN 2 *supra*.

19

Pursuant to CLEC, because of their violations, White only owes to Fannie Mae and New Rez the principal amount of the monthly sums (sic) doe on the White Loan and Shellpoint and Fannie Mae may not collect any interest, costs, fees, or other charges with respect to the loan.  COM. LAW § 12-1018(a)(2).  **However despite this express requirement of the law governing the White Loan, Shellpoint and Fannie Mae are not applying White's payments (including a payment made more than ten days after Shellpoint and Fannie Mae received notice of their errors) correctly and instead are wrongfully applying White's payments to sums not permitted by COM. LAW § 12-1018(a)(2) and the terms and conditions of White's Loan which is subject to CLEC**….

72.   As a result of Fannie Mae's and Shellpoint's acts and omissions related to CLEC as described herein, a controversy exists between (i) White and (ii) Fannie Mae and Shellpoint concerning the sums lawfully due on the White Loan.

AC at ¶¶34-36, 72 (emphasis added).

White's loan is governed by CLEC.  AC at ¶ 19; Ex. 1.[6]  The Defendants violated multiple CLEC provisions related to White.  AC at ¶ 32.  White notified the Defendants twice about their errors.  AC at ¶¶ 34, 35.  Yet, the Defendants took no action (timely or otherwise) to correct their errors as permitted by CLEC.  AC at ¶¶ 35, 36; Com. Law § 12-918(a)(3)(ii).  Therefore, as a matter of law and the written agreement between the Parties (Ex. 1), the Defendants "may collect only the principal amount of credit extended and may not collect any interest, costs, fees, or other charges with respect to the credit extension." COM. LAW § 12-918(a)(2).  *Patton*, 85 A.3d at 185.  White's controversy concerns simply the application of her April 2020 and May 2020 payments at the time of the filing of her AC that were in violation of CLEC.  AC at ¶ 36.  Those payments are far below the $75,000.00 threshold required for diversity jurisdiction.  Ex. 2.

---

[6]      *Patton v. Wells Fargo Fin. Maryland, Inc.*, 85 A.3d 167, 185 (2014)("An originating lender who enters into a…contract with a consumer borrower may choose, through a written election in the contract, to have the contract governed by CLEC. If the originating lender assigns that contract, **the assignee is obligated to comply with the provisions of CLEC**…")(emphasis added).

The Defendants' suggestion that White's claim should be viewed through the period of time encompassing the time of the commencement of this action through the "maturity" of her loan is pure speculation and not supported by the plain language of the AC. Nowhere in her AC does White assume the Defendants will violate the terms of her loan in the future.[7]  Further, while the object of the Defendants' actions and omissions may continue to violate the terms of White's loan and CLEC into the future, the Defendants' objectives cannot serve as a basis to create diversity jurisdiction.  Maryland law also does not permit declaratory judgment claims on claims which have not accrued or in anticipation of potential future events:

> "This Court has defined a justiciable controversy as one wherein 'there are interested parties asserting adverse claims **upon a state of facts which must have accrued** wherein a legal decision is sought or demanded.' " *Id.,* 309 Md. at 690, 526 A.2d at 601 (emphasis added in *Boyds* ) (quoting *Patuxent Co. v. Comm'rs,* 212 Md. 543, 548, 129 A.2d 847, 849 (1957)). The rationale is that "addressing non-justiciable issues 'would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State.' " *Id.,* 309 Md. at 690, 526 A.2d at 602 (quoting *Hatt,* 297 Md. at 46, 464 A.2d at 1078)….
>
> The Court stated that "[a] declaratory relief action that requests adjudication based on facts that have yet to occur or develop lacks ripeness and should be dismissed for failure to allege a justiciable controversy." *Superblock II,* 413 Md. at 356, 992 A.2d at 488 (citing *Hickory Point P'ship v. Anne Arundel Cnty.,* 316 Md. 118, 130, 557 A.2d 626, 632 (1989)); *see also id.* ("In a declaratory judgment proceeding, the court will not decide future rights **in anticipation of an event which may never happen,** but will wait until the event actually takes place.") (emphasis added) (quoting *Boyds,* 309 Md. at 690, 526 A.2d at 602) (internal quotation marks and brackets omitted); **488 *id.* ("The disagreement over which declaratory relief is

---

[7]     In fact, White's AC suggests the opposite and identifies the Defendants' various legal duties to not act unfairly and deceptively in governing her loan.  AC at ¶¶ 11-15.  First among these is the duty and expectation that Shellpoint will comply with its "duty of good faith and fair dealing in communications, transactions, and course of dealing" with White pursuant to MD. CODE REGS. 09.03.06.20.  AC at ¶ 11.  By Defendants' logic White is presumed to expect to be dealing with scoundrels and the Court has jurisdiction on that basis.  Such an assumption is without merit.  In addition, Maryland does not recognize an anticipatory breach of contract claim.  *Phelps v. Herro*, 137 A.2d 159, 164 (Md. 1957).  So, White would have no basis to pursue declaratory relief in anticipation of future contractual violations by the Defendants.

sought **must not be nebulous or contingent but must have taken on fixed and final shape** so that a court can see what legal issues it is deciding.") (emphasis added) (quoting *Hickory Point P'ship,* 316 Md. at 131, 557 A.2d at 632) (internal quotation marks and brackets omitted).

*State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 92 A.3d 400, 483–84, 487-88 (2014) (emphasis in original).

While the Defendants obviously wish to expand White's claims to something they are not to acquire this Court's jurisdiction, that desire (and effort to re-write White's actual declaratory judgment claim) is not permitted to establish the Court's jurisdiction.  Neither can "the collateral effect of the decree, by virtue of stare decisis, upon other and distinct controversies…be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law." *Healy v. Ratta*, 292 U.S. 263, 267 (1934).  *See also Ocean City Taxpayers for Soc. Justice v. Mayor & City Council of Ocean City*, No. CV RDB-15-1947, 2015 WL 7567722, at *8 (D. Md. Nov. 25, 2015)(applying with approval *Healy*).

Even if the jurisdictional threshold and complete diversity existed for White's individual claim under Count II of her AC, the Federal

> DJA grants district courts the discretion to entertain declaratory judgment actions; courts need not hear such actions in all cases. *United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 493 (4th Cir.1998). "[C]ourts may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an 'actual controversy' between the parties ...; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in the exercise of jurisdiction." *Volvo Const. Equip. N.A., Inc. v. CLM Equip. Co.,* 386 F.3d 581, 592 (4th Cir.2004).

*Beltway Capital, LLC v. Mortg. Guar. Ins. Corp.*, No. CIV.A. WMN-11-376, 2011 WL 2066603, at *1 (D. Md. May 25, 2011).[8]  *See also Fenwick Commons Homeowners Ass'n, Inc. v.*

---

[8]     While White's declaratory judgment claims are based on Maryland's declaratory judgment statute, upon removal the Federal DJA generally applies. *First Nationwide Mortg. Corp. v. FISI*

*Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 2:19-CV-00057-DCN, 2019 WL 1760150, at *3–4 (D.S.C. Apr. 22, 2019).

As shown *supra*, there is no independent basis for this Court's jurisdiction (either Federal question or diversity) over the Parties as the Court does not have jurisdiction of the claims in Count I of White's AC.  Further,

> it is well-settled law in the Fourth Circuit that the Declaratory Judgment Act "does not provide a source of jurisdiction which is independent of substantive federal law." *Gibraltar, P.R., Inc. v. Otoki Group, Inc.,* 104 F.3d 616, 619 (4th Cir.1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 16–17 n. 14 (1983)); *Interstate Petroleum Corp. v. Morgan,* 249 F.3d 215, 221 n. 7 (4th Cir.2001) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950)).

*Mid-Atl. Soaring Ass'n, Inc. v. F.A.A.*, No. CIVA RDB 05-2110, 2006 WL 1892412, at *5 (D. Md. June 29, 2006).

In considering whether to exercise its discretion to hear the Plaintiff's declaratory judgment claims in circumstances like those actually presented by White's claims

> [a] district court should consider:
>
> > (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Kapiloff,* 155 F.3d at 493–94.

---

*Madison, LLC*, 219 F. Supp. 2d 669, 672 (D. Md. 2002)("Although First Nationwide originally filed this action for declaratory relief under Maryland state law, the federal Declaratory Judgment Act will govern the case in this Court").

*Riley v. Dozier Internet Law, PC*, 371 F. App'x 399, 402 (4th Cir. 2010).

White's declaratory judgment claim exclusively involves questions of state law—i.e. the rights of the Defendants to apply White's April and May 2020 mortgage payments to sums barred by CLEC.  Maryland and Maryland courts have a strong interest in resolving issues of pure Maryland law like those presented by White's declaratory judgment claims in her AC.

As demonstrated herein, Defendants' removal to this Court of White's AC was simply forum shopping to attempt to improperly expand this Court's jurisdiction to a range of state-law issues never intended by Congress to be within the scope of this Court's limited jurisdiction.  Based on the argument herein, White respectfully requests the Court to decline exercising jurisdiction over White's declaratory judgment claims if it finds if the jurisdictional threshold and complete diversity existed for White's individual, declaratory judgment claim.  In exercising such discretion, the Court will avoid impermissible entanglement between the State court who has a primary responsibility to interpret state laws like CLEC.

## IV.    CONCLUSION

WHEREFORE, Plaintiff Marceline White respectfully moves that this action be remanded to the Circuit Court for Anne Arundel County, Maryland for the reasons stated herein.

Respectfully submitted,

/s/ *Phillip R. Robinson*
Phillip R. Robinson
Federal Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
(301) 448-1304
phillip@marylandconsumer.com