IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| **MARCELINE WHITE** | * | |
| *On behalf of herself individually* | * | |
| *and similarly situated persons* | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Case No: 1:20-cv-1259-RDB |
| | * | |
| **NEWREZ LLC, d/b/a SHELLPOINT** | * | |
| **MORTGAGE SERVICING** *et al.* | * | |
| | * | |
| **Defendants** | * | |
| | * | |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**


Respectfully Submitted,

*//s//Phillip R. Robinson*
Phillip R. Robinson
Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304

*Counsel for the Plaintiff and Putative
Class Members*


Date Submitted: June 23, 2020

i

## TABLE OF CONTENTS

Page

I.   DEFENDANTS SEEMINGLY ABANDON CERTAIN BASIS OF REMOVAL AS STATED IN THEIR NOTICE OF REMOVAL……………...................................................................................1

II.   DEFENDANTS IMPROPERLY ASK THE COURT TO DISREGARD FOURTH CIRCUIT PRECEDENT ……………........…………..……………........................................................3

III.   HAVING CONCEDED THAT THEY DO NOT INTEND TO VIOLATE CLEC IN THE FUTURE, THE DEFENDANTS ASK THE COURT TO EXPAND THE OBJECT OF WHITE'S ACTUAL CLAIM IN COUNT II OF HER AMENDED COMPLAINT TO PRESUME SHE IS ENTITLED TO FUTURE BENEFITS....................................................................................................10

IV.   SINCE THE COURT DOES NOT HAVE ORIGINAL JURISDICTION PURSUANT TO 28 U.S.C. § 1332 OR 28 U.S.C. § 1331, THE COURT MAY NOT RETAIN SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. § 1367.....................................................................................13

V.   CONCLUSION ....................................................................................................14

**Table of Authorities**

**Cases**                                                                                        **Page(s)**

*Abitsch & Abitsch, LLC v. Wanigatunga*, 2012 WL 1919987
(N.D. Cal. 2012) ........................................................................................ 4

*Addington v. LoanDepot.com, LLC*, 2017 WL 4685428
(N.D.W. Va. 2017) ...................................................................................... 2

*Burrell v. Bayer Corp.*, 918 F.3d 372 (4th Cir. 2019) ............................. *passim*

*Byrne-Egan v. Empire Exp., Inc.*, 2011 WL 6749821 (D. Md.
2011) ........................................................................................................ 13

*Cox-Stewart v. Best Buy Stores, L.P.*, 295 F. Supp. 2d 566
(D. Md. 2003) .............................................................................................. 3

*Diamond v. U.S. Bank, N.A.*, 2020 WL 2319112 (D. Md.
2020) .......................................................................................................... 6

*Exxon Mobil Corp. v. Albright*, 433 Md. 303 (2013) .............................. 11

*Gallego v. Northland Grp. Inc.*, 814 F.3d 123 (2d Cir. 2016) ................ 10

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir.
2011) ........................................................................................................... 9

*Griffiths v. Nationstar Mortg., LLC*, 2019 WL 5088747 (E.D.
Va. 2019) ................................................................................................. 5-6

*Gunn v. Minton*, 568 U.S. 251 (2013) ................................................. 9, 10

*Healy v. Ratta*, 292 U.S. 263 (1934) ....................................................... 2

*Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860 (7th Cir. 2016) ................ 9

*Lanham Ford, Inc. v. Ford Motor Co.*, 101 F. App'x 381 (4th
Cir. 2004) .................................................................................................... 2

*Lee v. Citimortgage, Inc.*, 739 F. Supp. 2d 940 (E.D. Va.
2010) ......................................................................................................... 12

*Liberty Mut. Fire Ins. Co. v. Hayes,* 122 F.3d 1061 (4th Cir.
1997) ......................................................................................................... 12

**Table of Authorities**

**Cases Cont.**

*Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) .......... 6

*Ocean City Taxpayers for Soc. Justice v. Mayor & City Council of Ocean City*, 2015 WL 7567722 (D. Md. 2015) .......... 2

*Packett v. Unveristy of Maryland Med. Ctr.*, 2017 WL 5903759 (D. Md. 2017) .......... 5

*Price v. PennyMac Loan Serv., LLC*, 2018 WL 4291741 (S.D.W. Va. 2018) .......... 12

*Pressl v. Appalachian Power Co.*, 842 F.3d 299 (4th Cir. 2016) .......... 3, 7

*Ramsay v. Sawyer Prop. Mgmt. of Maryland, LLC*, 948 F. Supp. 2d 525 (D. Md. 2013) .......... 14

*United States v. Morrison*, 29 U.S. 124, 7 L. Ed. 804 (1830) .......... 10

**Statutes**

28 U.S.C.A. § 1331 .......... *passim*

28 U.S.C. § 1332 .......... *passim*

28 U.S.C. § 1367(a) .......... 13

COM. LAW § 12-918 .......... 11, 12

COM. LAW § 12-920 .......... 11

COM. LAW § 12-1005(a)(2)(i) .......... 7

**Rules**

MD. RULE 2-341 .......... 4

iv

**Table of Authorities**

**Other
Authorities**

§ 3722 Removal Based on Federal-Question Jurisdiction,     5
14C Fed. Prac. & Proc. Juris. § 3722 (Rev. 4th ed.)

Fannie Mae Servicer Guide, Chapter A-3, Repurchases,     13
Indemnifications, and Make Whole Payment Requests (June
10, 2020)

Mᴅ. Cᴏᴅᴇ Rᴇɢs. 09.03.06.20     7

Md. Code Regs. 09.03.06.08     7

I.   **DEFENDANTS SEEMINGLY ABANDON CERTAIN BASIS OF REMOVAL AS STATED IN THEIR NOTICE OF REMOVAL**

The Defendants claimed in their Notice of Removal the grounds for seeking this Court's jurisdiction were based on:

(i)   Diversity jurisdiction pursuant to 28 U.S.C. § 1332 by impermissibly aggregating the damages, attorney fees, and costs of Ms. White and the putative class members, in Count I of her Amended Complaint (ECF. 1 at ¶¶ 8-14) to a sum in excess of $75,000.00;

(ii)   Federal Question and Supplemental Jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 (ECF. 1 at ¶¶ 15-27) by falsely claiming that "this Court is vested with federal question jurisdiction because causes of action in this civil action arise entirely under the laws of the United States."  ECF. 1 at ¶ 23.

The Defendants never elected to amend their Notice of Removal or even seek leave to amend their Notice of Removal.  *See generally* Docket.  Yet in their Opposition to Plaintiff's Motion to Remand (ECF. 18), the Defendants have seemingly abandoned certain grounds of removal and conceded certain arguments advanced by Plaintiff in her motion to remand.

For example, the Defendants admit that "Shellpoint and Fannie Mae do not expect to violate CLEC in the future" (Opp. to Remand at 8) and therefore concede that the only controversy subject to White's state law declaratory judgment claim in Count II of her Amended Complaint (ECF. 7) concerns just "the application of her April 2020 and May 2020 payments at the time of the filing of her AC that were in violation of CLEC.  AC at ¶ 36.  Those payments are far below the $75,000.00 threshold required for diversity jurisdiction. Ex. 2."  Mem. in Sup. of Remand

(ECF. 14-1 at Page 20 & ECF. 14-3).[1]   Relatedly, the Defendants do not offer the Court any persuasive basis to disregard the binding precedent of *Healy v. Ratta*, 292 U.S. 263, 267  (1934) which held that "the collateral effect of the decree, by virtue of stare decisis, upon other and distinct controversies…be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law." *See* Mem. in Sup. of Remand (ECF. 14-1 at Page 22).  Rather, Defendants fail to address that authority and this Court's prior ruling in *Ocean City Taxpayers for Soc. Justice v. Mayor & City Council of Ocean City*, No. CV RDB-15-1947, 2015 WL 7567722, at *8 (D. Md. Nov. 25, 2015) adopting *Ratta*.  *See generally* Opp. to Remand.

The Defendants also conceded in their opposition, notwithstanding their claims in their Notice of Removal at ¶ 12, that they may not aggregate the class members for amount in controversy with White's individual claims to establish the jurisdictional threshold required by 28

---

[1]    Even though the Defendants freely admit their intention not to violate CLEC in the future in relation to White, they claim the object of White's claim in Count II of her AC is more than what is actually at controversy.  Opp. to Remand at 7-13 (arguing the object of the claim equals $102,736.02).  Adopting the Defendants' erroneous argument and expansion of Plaintiff's actual claims would be in error. *Compare Lanham Ford, Inc. v. Ford Motor Co.*, 101 F. App'x 381, 382 (4th Cir. 2004)("Though it is doubtless true that Lanham's ultimate strategic goal is to retain the dealership and the Ford Motor franchise, the object of the present litigation is narrower than this goal. In the present litigation, Lanham seeks only a new hearing before the Policy Board, with rights of full discovery, and an injunction against termination of the franchise pending completion of this new hearing. This requested relief, and not the dealership itself, constitutes the object of the present litigation").  Rather, by advancing the misplaced and erroneous argument that the value of White's declaratory judgment claim allegedly equals $102,736.02, the Defendants ask the Court to adopt that alleged sum of the object of their strategic goal which is not a basis for removal. *Addington v. LoanDepot.com, LLC*, No. 2:17-CV-104, 2017 WL 4685428, at *4 (N.D.W. Va. Oct. 18, 2017)("The defendant in this case seeks to construe the object of the litigation far more broadly than previous courts—the object of litigation in a declaratory judgment action only includes the object *actually at issue*, not the "ultimate strategic goal" of litigation. *Lanham*, 101 Fed.Appx. at 383").

U.S.C. § 1332.  Opp. to Remand at Page 8, FN 1 ("Defendants agree that the type of several relief sought therein is not appropriately aggregated to meet the amount in controversy requirement").

Finally, even though the Notice of Removal did not identify the citizenship of all members of Shellpoint (*see* ECF. 18-1 at ¶ 9) to demonstrate if complete diversity even existed as of the date of removal as required by 28 U.S.C. § 1332, and the Notice of Removal was never properly amended, the Defendants rely on subsequent affidavit testimony dated June 8, 2020 to identify the citizenship of all of Shellpoint's members.  ECF. 18-1 at ¶ 9.    This testimony does not provide the citizenship of Shellpoint's members at the time of removal (i.e. May 20, 2020) or even the basis for the purported knowledge of the affiant.    *Id.*    As such, Defendants have not met their burden.  *Cox-Stewart v. Best Buy Stores, L.P.*, 295 F. Supp. 2d 566, 567 (D. Md. 2003)("Complete diversity of citizenship must be established at the time of removal").

In light of Defendants' abandonment of these arguments and failure to make any effort to timely amend their Notice of Removal, White will focus this reply on the remaining material theories advanced by Defendants.  In sum, the Defendants have not met their burden for this Court's limited jurisdiction and this action should be remanded to the Circuit Court for Anne Arundel County, Maryland.

## II.    DEFENDANTS IMPROPERLY ASK THE COURT TO DISREGARD FOURTH CIRCUIT PRECEDENT

Having abandoned several of their key grounds of removal as discussed in Reply Argument § I supra, the Defendants invite the Court to disregard the precedent of *Burrell v. Bayer Corp.*, 918 F.3d 372 (4th Cir. 2019) and *Pressl v. Appalachian Power Co.*, 842 F.3d 299 (4th Cir. 2016). Instead, Defendants seek to expand the scope of this Court's jurisdiction to state law claims enacted not by Congress but by the Maryland General Assembly.  *See e.g.* Opp. to Remand at 3-4, 17-22.

3

Specifically, Defendants claim without merit that White's claims in Count I of her Amended Complaint "fail[] to demonstrate any independent basis, under Maryland law, for the alleged prohibition on 'convenience fees' that does not also involve the predicate assertion that such fees are prohibited under the [Fair Debt Collection Practices Act (FDCPA)]." *Id.* at 17.  In advancing these arguments, the Defendants not only overlook the actual Amended Complaint before the Court.

White's claims in her Amended Complaint, which was pending at the time of the removal, do not state any claim pursuant to the FDCPA.  ECF. 7.[2]  Rather, her claims were entirely under state law.  ECF. 7 (stating claims under the MCDCA, MCPA, and CTS & JUD. PROC. § 3-409).  As detailed in her motion to remand, White's MCDCA claims are not identical to a claim under the FDCPA.  Mem. in Sup. of Remand (ECF. 14-1) at Pages 10-13.  Yet, the Defendants wish for the Court to find the scope of the FDCPA and MCDCA to be the same is all respects.  *See e.g.* Opp. to Remand at 17 ("There is no doubt that this issue is actually disputed because whether the convenience fees are prohibited under the FCPA is, in essence, the central issue in this case"), 19 ("Whether the FDCPA prohibits the collection of convenience fees lies at the heart of this case, is an unsettled area of the law..."), 20 (the MCDCA "prohibits the same conduct prohibited by the FDCPA...[and] [t]here is no language in the statute to suggest that certain provisions of the FDCPA are inapplicable or that the [MCDCA] goes beyond the FDCPA"), 21 (the differences

---

[2]     The Defendants acknowledge that White dropped the FDCPA claim alleged in her original complaint.  Opp. to Remand at 15-16.  White was permitted pursuant to MD. RULE 2-341 to amend and did so days before this matter was removed on May 20, 2020.  ECF. 2.  The apparent suggestion that prior claims, not subject to the action at the time of removal, can serve as a basis of removal is simply unjustified.  *See e.g. Abitsch & Abitsch, LLC v. Wanigatunga*, No. C 12-2112 MEJ, 2012 WL 1919987, at *1 (N.D. Cal. May 24, 2012) ("federal question jurisdiction does not exist because no federal claims were present at the time of removal").

between the FDCPA and MCDCA "are largely irrelevant because the fact remains, to recover under the specific section cited, there must first be a violation of the FDCPA….[and] it makes no difference what additional defenses or limitations on liability may or may not exist under the cause of action").  Despite Defendants' bluster, White's MCDCA claim is not synonymous with the FDCPA[3] and is based on an application of state law that simply provides a parallel remedy.

The court in *Griffiths v. Nationstar Mortg., LLC*, No. 3:19CV503-HEH, 2019 WL 5088747 (E.D. Va. Oct. 10, 2019) rejected the nearly identical argument (involving a different federal statute than the FDCPA[4]) advanced here by the Defendants and explained:

> To support their claim of federal jurisdiction, Defendants maintain that "it will be virtually impossible for the parties to litigate such claims without looking to, relying upon, and applying federal statutory law and federal case law." (Notice of Removal 6, ECF 1.) Defendants point out that Va. Code Ann. § 44-102.1 "directs the litigant to the SCRA without providing any further instruction regarding what 'right, benefit, or protection' the SCRA provides or how it should be applied." (*Id.* at 7.) Furthermore, to be entitled to protection, "[t]he litigant also must satisfy the definition of 'active duty' as defined by the federal statutory law." (*Id.; see* 10 U.S.C. § 101(d)(1).)
>
> While this case is closely moored to the SCRA, it principally turns on whether the Defendant mortgage lender was in compliance with that Act during Plaintiff's period of active military service. The statutory requirements are clear—state law

---

[3]    *Packett v. Unveristy of Maryland Med. Ctr.*, No. CV RDB-17-1630, 2017 WL 5903759, at *4 (D. Md. Nov. 30, 2017)(recognizing the limits of alternative federal question jurisdiction exists "'only when *every* legal theory supporting the claim requires the resolution of the federal issue.' *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 817 (4th Cir. 2004) (emphasis in original); *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177 (4th Cir. 2014) (en banc)"). *See also* § 3722 Removal Based on Federal-Question Jurisdiction, 14C Fed. Prac. & Proc. Juris. § 3722 (Rev. 4th ed.)("If a state-law based theory can be offered for the plaintiff's cause of action, even though the state-law basis does not appear in the complaint, some federal courts have held that the case cannot be removed. Indeed, plaintiff's right to relief will be found to depend on federal law only when every legal theory asserted requires the resolution of a federal issue").

[4]    The Virginia statute at issue in *Griffiths* created a state cause of action for violations of the federal Servicemembers Civil Relief Act.  VA. CODE ANN. § 44-102.1.  The MCPA was also amended to add a similar claim under Maryland law based on violations of the SCRA.  COM LAW § 13-301(14)(xxxiv).

creates the cause of action. As a member of the Virginia National Guard, Plaintiff was entitled under Va. Code Ann. § 44-102.1 to the benefits and protections of the SCRA when called to active duty for 30 consecutive days or more. Among the benefits accorded servicemembers upon activation is a limited mortgage interest rate on obligations incurred prior to active duty. *See* 50 U.S.C. § 3937. There is no allegation that the underlying federal statute is unconstitutional in any relevant application.

The claims in this case evolve from the Defendants' alleged failure to comply with the provisions of § 44-102.1 during and after the Plaintiff's deployment to Iraq from 2004, 2005, and his return to active duty from 2006 to 2017. In addition to seeking relief under § 44.102.1, Plaintiff also seeks consequential damages for intentional infliction of emotional distress, trespass, ejectment, and conversion of personal property under Virginia law.

Contrary to the Defendants' theory of removal, this case does not involve a disputed question of federal law. "Specifically, Griffiths' claims under Virginia Code § 44-102.1 inevitably require review, interpretation, and application of the federal statutory law it wholly adopts." (Def. Nationstar's Resp. Opp'n to Mot. Remand 2, ECF No. 28.) The underlying federal law is not in dispute. **The central issue is whether it was violated by the corporate defendant as applied under Virginia law**. There is no issue of federal preemption in this case.

**The mere fact that Plaintiff's claim may raise a federal issue, such as his qualification for SCRA protection, is insufficient to constitute a substantial question of federal law**. Here, the state and federal laws simply provide parallel remedies.

*Griffiths v. Nationstar Mortg., LLC*, No. 3:19CV503-HEH, 2019 WL 5088747, at *2–3 (E.D. Va. Oct. 10, 2019)(emphasis added).  *See also Diamond v. U.S. Bank, N.A.*, No. CV TDC-19-1458, 2020 WL 2319112, at *7 (D. Md. May 11, 2020)(rejecting federal question jurisdiction based on state law claims related to Federal loan guidelines);*Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 561 (D. Md. 2019), <u>as amended</u> (June 20, 2019), <u>aff'd,</u> 952 F.3d 452 (4th Cir. 2020)(rejecting jurisdiction based on federal interests related to climate change in relation to state law claims).

Without any actual federal claim before the Court, the Defendants are required to demonstrate to the court the four factors to find the narrow grounds upon which federal question jurisdiction over White's MCDCA and MCPA claims and they cannot do so.

> [T]he federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, —— U.S. ——, 133 S.Ct. 1059, 1065, 185 L.Ed.2d 72 (2013); <u>see also</u> <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 312–14, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Federal jurisdiction will lie only if a case meets all four requirements. <u>Gunn</u>, 133 S.Ct. at 1065.

*Pressl v. Appalachian Power Co.*, 842 F.3d 299, 303 (4th Cir. 2016). *See also Burrell v. Bayer Corp.*, 918 F.3d 372, 380–81 (4th Cir. 2019)("the party seeking removal, Bayer bears the burden of establishing federal jurisdiction, in a context in which we 'strictly construe' jurisdictional limits because of the 'significant federalism concerns' that attend the removal of cases from state court to federal court. *Mulcahey*, 29 F.3d at 151.").

Here, as to the first factor, the Fourth Circuit has found it is only necessary to look to the plaintiff's "causes of action to determine whether they raise federal questions under § 1331. And for most of their theories of liability, it is clear and undisputed that the [plaintiffs] can establish all the necessary elements entirely independently of federal law." *Burrell*, 918 F.3d at 382. Here, White's claims in relation to the improper convenience fees imposed by Shellpoint are not just barred by the FDCPA (that is subject to state law considerations) but are also barred entirely by Maryland law. *See e.g.* AC at ¶ 2 (identifying contractual relationships governing the parties that do not authorize convenience fees); ¶ 2(a) (identifying the Statute of Fraud's bar on fees and charges related to mortgages based on unwritten agreements), and ¶ 31(a)(identifying Maryland law governing the Defendants' relationship with White which bars the imposition of fees without a written agreement to do so (citing to COM. LAW § 12-1005(a)(2)(i)). *See also* MD. CODE REGS.

09.03.06.20 (cited at AC at ¶ 11 establishing a duty of good faith and fair dealing on Shellpoint); Md. Code Regs. 09.03.06.08 (which bars Shellpoint from altering the agreements governing its relationships with White and the putative class members unless any such agreement is in writing and executed by all the parties). Therefore is cannot be said that the right to impose and collect unauthorized convenience fees turns on the FDCPA when in fact Maryland law and regulations governing the parties bars such fees as well without a written agreement signed by all parties permitting them in the context of a consumer, mortgage loan. White's stand-alone claims under the MCPA also require no analysis of the FDCPA, and the other elements of the MCPA and MCDCA do not rely on any other federal statutory analysis. *See* Mem. in Sup. of Remand (ECF. 14-1 at Pages 6-14).

As to the third factor, the Defendants argue that single FDCPA element of White's MCDCA claim qualifies as "substantial" because it involves law and facts regarding the imposition of convenience fees to mortgage borrowers without a written agreement authorizing such fees is unclear, the FDCPA preempts state law, and the state court is not capable of interpreting the statutes at issue. Opp. to Remand at 18-19. These arguments were rejected by the Fourth Circuit and should be here.

> The federal questions implicated by the Burrells' assertions of negligence per se and fraud on the FDA — assuming, as we do, that they are necessarily raised — bear none of these hallmarks of "substantiality." **At bottom, what they require are fact-intensive inquiries into Bayer's compliance with certain FDA requirements: whether Bayer timely notified the FDA of alleged adverse events concerning Essure, manufactured Burrell's implant consistent with the FDA-approved design, and properly disseminated FDA-authorized labels and warnings**. The Burrells do not allege, by contrast, that the Act is unconstitutional in any of its relevant applications, or that the FDA has exceeded its statutory authority or misapplied its own regulations in its oversight of Essure. Their claims are purely "backward-looking," *id.* at 261, 133 S.Ct. 1059, limited to monetary relief for Bayer's alleged past non-compliance with federal safety standards. Though the resolution of those questions undoubtedly is important to Bayer — and to the Burrells — it is not "substantial in the relevant sense," because it lacks

"importance more generally" to the federal regulatory regime and to other medical-device manufacturers. *Id.* at 260–61, 133 S.Ct. 1059.

*Burrell*, 918 F.3d at 385–86 (emphasis added).

In *Gunn v. Minton*, 568 U.S. 251, 264–65 (2013) the Supreme Court also explained that state law claims which contained an element of federal patent law (to which the Federal courts have exclusive, statutory jurisdiction unlike the FDCPA) did not create federal question jurisdiction.

> As we recognized a century ago, "[t]he Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy." *New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 478, 32 S.Ct. 238, 56 L.Ed. 513 (1912). In this case, although the state courts must answer a question of patent law to resolve Minton's legal malpractice claim, their answer will have no broader effects. It will not stand as binding precedent for any future patent claim; it will not even affect the validity of Minton's patent. Accordingly, there is no "serious federal interest in claiming the advantages thought to be inherent in a federal forum," *Grable, supra,* at 313, 125 S.Ct. 2363. Section 1338(a) does not deprive the state courts of subject matter jurisdiction.

*Id.*

While the Defendants prefer the forum of this Court, their tactical desires do not expand this Court's limited jurisdiction and are contrary to *Gunn*.  Further, if the Court adopted the Defendants' analysis every mere reference of a federal statute in any state statute would further expand this Court's jurisdiction which would create significant federalism issues and "[a]ny doubt on that score is resolved against [the removing parties] which bear[] the burden of establishing jurisdiction, especially given the significant federalism implications of removing a state-law action from state court." *Burrell*, 918 F.3d at 384.

As to the Defendants' suggestion that the FDCPA preempts state law which grants White greater rights than under the FDCPA (Opp. at 18-19), that argument is specious.  "Congress did not intend the FDCPA to preempt consistent state consumer protection laws." *Gonzales v. Arrow*

*Fin. Servs., LLC*, 660 F.3d 1055, 1067 (9th Cir. 2011).  *See also Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 864 (7th Cir. 2016)("When referring to state law though, we must be mindful that the FDCPA preempts state law to the extent state law affords a consumer less protection than the FDCPA does"); *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 127 (2d Cir. 2016)("the FDCPA expressly contemplates the existence of state laws that offer protections to consumers that go beyond the FDCPA itself").  The MCDCA grants greater rights and protections to White other similarly situated consumers than the FDCPA by (i) applying to all creditors and not just debt collectors and (ii) extending the statute of limitations from one year under the FDCPA to three years under the MCDCA.

.       Finally, Maryland courts are capable of making rulings on Maryland law and there is no basis of authority for the Court to accept the Defendants' invitation to conclude the state courts are incapable in interpreting Maryland laws.  Opp. to Remand at 13-16.  In fact, our system of federalism recognizes that that state courts are perfectly capable of resolving state law questions like those presented in this action.  *See e.g. United States v. Morrison*, 29 U.S. 124, 137, 7 L. Ed. 804 (1830)(recognizing that all federal courts are bound by the rulings of the highest state courts on state law); *Gunn*, 568 U.S. at 263("the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its root in a misunderstanding of patent law").

        There is no federal question jurisdiction for the Court in this action and Defendants' simple desire to expand this Court's jurisdiction to cover state law claims should be DENIED.

### III.    HAVING CONCEDED THAT THEY DO NOT INTEND TO VIOLATE CLEC IN THE FUTURE, THE DEFENDANTS ASK THE COURT TO EXPAND THE OBJECT OF WHITE'S ACTUAL CLAIM IN COUNT II OF HER AMENDED COMPLAINT TO PRESUME SHE IS ENTITLED TO FUTURE BENEFITS

As stated *supra*, the Defendants admit that "Shellpoint and Fannie Mae do not expect to violate CLEC in the future." Opp. to Remand at 10.  Further, it is clear under Maryland law governing this action at the time of removal, that White was not permitted to seek declaratory relief valued at potentially, unknown values into the future.  Mem. In Sup. of Remand at 21-22.  *See also Exxon Mobil Corp. v. Albright*, 433 Md. 303, 352, on reconsideration in part, 433 Md. 502 (2013)(fear of potential, future damages that have not occurred is not ripe for consideration until the damages actually accrue).

Here, CLEC is self-executing in its application to White's relationship with the Defendants and CLEC permitted the Defendants multiple opportunities to cure their errors which they disregarded even after retaining counsel.  *See e.g.* COM. LAW § 12-920 (declaring "[a] credit grantor is not liable for any failure to comply with a provision of [CLEC] if, within 60 days after discovering an error and prior to institution of an action under this subtitle or the receipt of written notice from the borrower, the credit grantor notifies the borrower of the error and makes whatever adjustments are necessary to correct the error"); COM. LAW § 12-918(recognizing the penalty imposed on the Defendants for their CLEC violations could be cured it they had "correct[ed] the error[s] or violation[s] and makes [White] whole for all losses, including reasonable attorney's fees and interests, where appropriate, within 10 days after the credit grantor receives notice of the error or violation").

Having elected not to exercise their right to cure and correct their errors without any material difficulties, the Defendants wish for the Court to recognize the consequence of their election to not cure their errors and avoidance of the statutory protections available to them—i.e. their lost right to "collect any interest, costs, fees, or other charges with respect to the credit extension" (COM. LAW § 12-918(a)(2))—as the object of the litigation even though White's actual

declaratory judgment claims concern a limited controversy of the application of her April and May 2020 mortgage payments.  In other words, because of the consequences of the Defendants' negligence and errors, they believe the amount in controversy should be the measure of the entire loan profits for jurisdictional purposes.

The Fourth Circuit "has employed the 'either party approach,' examining the potential pecuniary effect that a judgment would have on either party to the litigation. *Government Employees Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir.1964)."  *Liberty Mut. Fire Ins. Co. v. Hayes,* 122 F.3d 1061 (4th Cir. 1997).  Here, the sums at issue are (i) $909.55 paid by White to Shellpoint (on behalf of Fannie Mae) on May 6, 2020 and (ii) $1,168.94 paid by White to Shellpoint on April 2, 2020 (on behalf of Fannie Mae) that was applied to interest on her loan and should have been appoint to principal pursuant to COM. LAW § 12-918(a)(2) since the Defendants had no right to collect interest from White.  *See also* AC at ¶ 36 and ECF. 14-3 at Page 3 of 5.  The amount in controversy therefore subject to White's claim in Count II of her Amended Complaint is just $2,078.49 which is far below the jurisdictional amount required by 28 U.S.C. § 1332.

The Defendants' measuring of potential future sums in controversy in this circumstance simply "far too speculative to meet even the preponderance of the evidence standard, and the Court cannot imagine even a speculative sum that would exceed $75,000" since the Defendants have conceded that they do not intend to further violate CLEC.  *Lee v. Citimortgage, Inc.*, 739 F. Supp. 2d 940, 947 (E.D. Va. 2010).  *See also Price v. PennyMac Loan Serv., LLC*, No. CV 1:18-00951, 2018 WL 4291741, at *5 (S.D.W. Va. Sept. 6, 2018).

Since CLEC is self-executing and the Defendants' non-right to "collect any interest, costs, fees, or other charges with respect to the credit extension" pursuant to COM. LAW § 12-918(a)(2)) has already occurred, since the Defendants chose not to timely correct their errors as permitted by

12

CLEC, the sum claimed to be the object of litigation by the Defendants, i.e. $102,736.02, is actually the sum Shellpoint likely owes Fannie Mae since "Shellpoint has agreed to indemnify Fannie Mae for its actions on Fannie Mae's behalf in relation to White."  AC at ¶ 3.  *See also* Fannie Mae Servicer Guide (June 10, 2020) at Chapter A-3, Repurchases, indemnifications, and Make         Whole         Payment         Requests         (available         at https://singlefamily.fanniemae.com/media/23106/display).  The amount in controversy and object of the litigation and claims between the Defendants is not a sum that may be utilized to acquire this Court's jurisdiction.  "The majority of courts, including the Fourth Circuit, have held that courts should look solely at the (sic) plaintiffs complaint and not consider the value of counterclaims, cross-claims, or third-party claims." *Byrne-Egan v. Empire Exp., Inc.*, No. JFM-11-CV-02857, 2011 WL 6749821, at *1 (D. Md. Dec. 22, 2011).

Here the actual amount in controversy between White and the Defendants is just (i) $15 for the unauthorized convenience fee imposed and collected by Shellpoint on behalf of Fannie Mae (AC at ¶ 30) subject to her claims in Count I and (ii) $2,078.49 in misapplied interest that should have been applied to principle sums due on White's loan pursuant to CLEC in Count II.  This combined sum is far below the jurisdictional amount required by 28 U.S.C. § 1332 and this case should be remanded to the state court.

### IV.    SINCE THE COURT DOES NOT HAVE ORIGINAL JURISDICTION PURSUANT TO 28 U.S.C. § 1332 or 28 U.S.C. § 1331, THE COURT MAY NOT RETAIN SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. § 1367

The Defendants' last material argument is that the Court should retain supplemental jurisdiction of this matter pursuant to 28 U.S.C. § 1367(a).  Opp. to Remand at 24-25.  However, since the Court does not have original jurisdiction pursuant to 28 U.S.C. § 1332 or 28 U.S.C. §

1331, the Court respectfully may not exercise supplemental jurisdiction.  28 U.S.C. § 1367(a).

The Court has explained previously:

> Under 28 U.S.C. § 1367, this Court has discretion to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3)…In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Thus, supplemental jurisdiction is a doctrine of discretion, and not a plaintiff's right. *Id….*
>
> In this case, this Court finds that Plaintiff's state law claims are not sufficiently tied to questions of federal policy such that exercising supplemental jurisdiction is appropriate.

*Ramsay v. Sawyer Prop. Mgmt. of Maryland, LLC*, 948 F. Supp. 2d 525, 537 (D. Md. 2013), aff'd, 593 F. App'x 204 (4th Cir. 2014).

Based on the foregoing the Court does not have supplemental jurisdiction to hear the claims before it since the Court does not have original jurisdiction as claimed by the Defendants' Notice of Removal.

## V.    CONCLUSION

Based upon White's well-reasoned Motion to Remand (ECF. 14) and the arguments herein, this case should be remanded to the Circuit Court for Anne Arundel County, Maryland. The claims before the Court are not subject to the Court's limited jurisdiction.  If the Court adopts the arguments and theories of the Defendants, the scope of this Court's jurisdiction would swallow a multitude of claims authorized not by Congress but by the Maryland General Assembly.  Under the guide points of our federal system, that result should be avoided.

Respectfully submitted,

/s/ Phillip R. Robinson
Phillip R. Robinson
Federal Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
(301) 448-1304
phillip@marylandconsumer.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on this day the foregoing, attachments, and proposed order were served via the Court's electronic filing on all counsel and parties of record.

_/s/ Phillip R. Robinson_____
Phillip Robinson

15