IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCELINE WHITE,
*On behalf of herself individually and similarly situated persons*      \*

    Plaintiff,      \*

                              Civil Action No. RDB-20-1259

v.      \*

NEWREZ LLC,      \*
d/b/a SHELLPOINT MORTGAGE
SERVICING, *et al.*,      \*

    Defendants.      \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiff Marceline White ("Plaintiff" or "White") brings this putative class action, on behalf of herself and similarly situated persons, against Defendants NewRez, LLC, doing business as Shellpoint Mortgage Servicing ("Shellpoint"), and Federal National Mortgage Association ("Fannie Mae") (collectively "Defendants"). (Am. Compl., ECF No. 7.) In her Amended Complaint,[1] White alleges that Defendants violated Maryland's Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 *et seq.* ("MCDCA") and Maryland's Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq* ("MCPA"). (*Id.*)

Currently pending before this Court is Plaintiff's Motion to Remand (ECF No. 14). Also pending is Plaintiff's Motion to Certify a Class and Subclass, Appoint Class Representatives and Class Counsel Pursuant to MD Rule 2-231 (ECF No. 9). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md.

---

[1] White amended her Complaint to remove an initial claim under the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

2018). For the reasons stated below, Plaintiff's Motion to Remand (ECF No. 14) is GRANTED, and Plaintiff's Motion to Certify a Class and Subclass, Appoint Class Representatives and Class Counsel Pursuant to MD Rule 2-231 (ECF No. 9) is DENIED AS MOOT. This case will be remanded to the Circuit Court for Anne Arundel County, Maryland.

## BACKGROUND

The facts contained herein are taken largely from Plaintiff's Amended Complaint (ECF No. 7) and are viewed in Plaintiff's favor in light of the Defendants' removal of this action from state court. Plaintiff White owns real property in Baltimore, Maryland for which she has a mortgage loan with Defendant Shellpoint, a mortgage lender and servicer. (Am. Compl. ¶¶ 8-10.) Defendant Fannie Mae is the owner of White's loan. (*Id.*)

On April 13, 2020, Plaintiff White filed the instant putative class action in the Circuit Court for Anne Arundel County, Maryland against Defendants Shellpoint and Fannie Mae, alleging violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (Count I), Maryland's Consumer Debt Collection Act and Consumer Protection Act (Count II), as well as seeking a declaratory judgment (Count III). (*See* Compl., ECF No. 2.) On May 11, 2020, White amended her Complaint to remove her claim under the federal Fair Debt Collection Practices Act. (*See* ECF No. 1-3; Am. Compl., ECF No. 7.) On May 20, 2020, Defendants removed White's suit to this Court on the basis of both diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. (Notice of Removal, ECF No. 1.)

In her Amended Complaint, White alleges that Shellpoint, as the loan servicer for Fannie May, charged unauthorized and unlawful "convenience" fees for accepting payments

by telephone and/or by the Internet on the residential mortgage accounts of White and others similarly situated. (*Id.*) In Count One, White alleges violations of Maryland's Consumer Debt Collection Act and Maryland's Consumer Protection Act. As to that Count, White purports to represent a class of

> All individuals in Maryland who since October 1, 2018 (i) paid a "convenience fee," (ii) collected in whole or in part by Shellpoint, (iii) in order to make a payment on a residential mortgage debt, and (iv) where the term "convenience fee" was not specifically enumerated in the original agreement creating such debt.

(Am. Compl. ¶ 38.) In Count Two, White seeks declaratory relief in her individual capacity only.

White now moves to remand this case to the Circuit Court for Anne Arundel County, Maryland, asserting that this Court does not have jurisdiction over her claims. (ECF No. 14.)

**STANDARD OF REVIEW**

A defendant in a state civil action may remove the case to federal court only if the federal court can exercise original jurisdiction over at least one of the asserted claims. 28 U.S.C. § 1441(a)-(c). Once an action is removed to federal court, the plaintiff may file a motion to remand the case to state court if there is a contention that jurisdiction is defective. 28 U.S.C. § 1447(c). The party seeking removal bears the burden of establishing jurisdiction in the federal court. *Johnson v. Advance America*, 549 F.3d 932, 935 (4th Cir. 2008). On a motion to remand, this Court must strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Phillip Morris, Inc.*, 950 F. Supp. 700, 701-02 (D. Md. 1997) (citation omitted); *see also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2004).

Federal courts have original jurisdiction over two kinds of civil actions: those which are founded on a claim or right arising under the Constitution, treaties or laws of the United States, and those where the matter in controversy exceeds $75,000 and is between citizens of different States. U.S. Const. art. III, § 2; 28 U.S.C. §§ 1331, 1332(a). If a civil action is not based on a question of federal law, then a federal court may only exercise original jurisdiction based on diversity of citizenship.

Finally, when a party brings a claim for declaratory judgment, "[i]t has long been settled that a federal court has a measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction." *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 435 (D. Md. 2018) (quoting *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330 (D. Md. 2011)). While the discretion is not absolute, a court may decline to exercise jurisdiction "for 'good reason.'" *LWRC*, 838 F. Supp. 2d 330 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). A district court should consider concerns of federalism, efficiency, and comity before exercising jurisdiction over a declaratory judgment action. *See Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992).

## ANALYSIS

Defendants removed this case to federal court based on federal question and diversity jurisdiction. (*See* Notice of Removal, ECF No. 1.) However, as explained below, this case does not present a set of circumstances so substantial as to create federal question jurisdiction and choosing to exercise jurisdiction in this case would disrupt Congress's intended balance between the federal and state courts. In addition, while this Court has diversity jurisdiction over Count II's declaratory judgment action, the Court will exercise its discretion to decline

jurisdiction over Count II and will exercise its discretion to decline supplemental jurisdiction over Count I.  Therefore, this Court shall grant Plaintiff's request to remand this case to the Circuit Court for Anne Arundel County, Maryland.

## I.      Federal Question Jurisdiction

To determine whether a plaintiff's claims "arise under" the laws of the United States, this Court adheres to the "well-pleaded complaint rule," which requires an assessment of the allegations of the complaint.  *Caterpillar Inc v. Williams*, 482 U.S. 386, 392 (1987).  Under this rule, courts "ordinarily … look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331."  *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996)).  A case can "arise under" federal law in one of two ways.  *Virginia ex rel. Hunter Labs., LLC v. Virginia*, 828 F.3d 281, 286 (4th Cir. 2016) (citing *Gunn v. Minton*, 568 U.S. 251, 257 (2013)).  The more common reason is when a plaintiff's cause of action is itself created by federal law.  *Id.* at 287.  The second, narrower, way of establishing federal jurisdiction is when it is conferred over a "special and small category of claims that originate in state rather than federal law."  *Id.* (citations omitted). In such situations, "jurisdiction will only exist over a state-law claim if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id.* (referring to the *Grable* test provided by the United States Supreme Court in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

5

In her Amended Complaint, Plaintiff alleges violations of Maryland's Consumer Debt Collection Act and Maryland's Consumer Protection Act and seeks a declaratory judgment. (Am. Compl., ECF No. 7.)  Despite pleading in her original Complaint that Defendants violated federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq* ("FDCPA"). (ECF No. 2), Plaintiff's Amended Complaint contains no allegations that Defendants violated any federal statutes.[2]  Defendants nevertheless contend that Plaintiff's state law claims necessarily raise a federal issue because any violation of Maryland's Consumer Debt Collection Act ("MCDCA") or Maryland's Consumer Protection Act ("MCPA") would be entirely predicated on a violation of the federal FDCPA.  They assert that both the MCDCA and MCPA claims turn on the question of whether there has been a violation of the FDCPA, which prohibits the collection of convenience fees "unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  (Def.'s Opp'n at 17, ECF No. 18 (quoting 15 U.S.C. § 1692f(1)).)

"A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of the federal issue."  *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 817 (4th Cir. 2004) (emphasis in original); *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177 (4th Cir. 2014) (en banc). "In other words, if the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331."  *Dixon*, 369 F.3d at 817.

---

[2] Whether Plaintiff attempted to avoid federal jurisdiction by eliminating her FDCPA claim, as Defendants suggest, is of no moment, as she did so before removal to this Court and it is "the right of the[] plaintiff[] to set the tone of [her] case by alleging what [she] choose[s]."  *See Kimsey v. Snap-On Tools Corp.*, 752 F. Supp. 693, 695 (W.D.N.C. 1990).

Here, resolution of Plaintiff's claims does not rise and fall on the FDCPA. Instead, Maryland statutory law creates the independent causes of action for which Plaintiff seeks relief, namely Maryland's Consumer Debt Collection Act ("MCDCA") and Maryland's Consumer Protection Act ("MCPA"). The MCDCA and MCPA prohibit unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts, which Plaintiff alleges Defendants have violated by charging unauthorized convenience fees. (*See* Am. Compl. ¶¶ 31, 53-67 (citing MCDCA, Md. Code Ann., Com. Law §§ 14-201 *et seq.*; MCPA, Md. Code Ann., Com. Law §§ 13-101 *et seq.*).) While Plaintiff references the federal Fair Debt Collection Practices Act, which also prohibits the collection of such unauthorized convenience fees, Plaintiff's claims do not rely on the analysis or interpretation of that federal statute.

As Judge Nickerson of this Court noted in *Greer v. Crown Title Corporation*, 216 F. Supp. 2d 519 (D. Md. 2002), a plaintiff's incorporation of a federal statute for reference does not create a substantial federal question. *See, Greer* 216 F. Supp. 2d at 523 ("The fact that the complaint references, or is in some part based upon, federal law does not mean that this case 'arises under' federal law as contemplated by § 1331"). This Court has also previously noted in *Cherry v. One Stop Auto Parts, Inc.*, Civil No. RDB-18-3054, 2019 WL 2164096, at *4 (D. Md. May 17, 2019), that the incorporation of the federal Truth in Lending Act in a complaint alleging a violation of a state statute did not create substantial federal question. *See also Griffiths v. Nationstar Mortg., LLC*, Civil Action No. 3:19cv503-HEH, 2019 WL 5088747 (E.D. Va. Oct. 10, 2019) ("The mere fact that Plaintiff's claim may raise a federal issue, such as his qualification for [federal Servicemembers Civil Relief Act] protection, is insufficient to constitute a substantial question of federal law. Here, the state and federal laws simply provide

parallel remedies."); *Vena v. Town of Kearny*, Civil Action No. 13-06644 (SRC), 2014 WL 1666052, at *2 (D.N.J. Apr. 25, 2014) ("Where a state law…incorporates a federal standard for reference purposes, it does not transform the state claim into a federal question sufficient to invoke § 1331(a).").

Finally, courts are "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon*, 369 F.3d at 816 (quoting *Mulcabey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). Here, federal law does not preempt state law, as the federal Fair Debt Collection Practices Act provides that it "does not annul, alter, or affect, or exempt any person subject to [the Fair Debt Collection Practices Act] from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of [the Fair Debt Collection Practices Act]." *See* 15 U.S.C. § 1692n. A state law is consistent with the Fair Debt Collection Practices Act "if the protection such law affords any consumer is greater than the protection provided by [the Fair Debt Collection Practices Act]." *Id.* Maryland's Consumer Debt Collection Act is, in fact, distinct from the federal Fair Debt Collection Practices Act in significant ways. For example, the Maryland Consumer Debt Collection Act provides greater protections in its extension of the statute of limitations from one year under the federal Fair Debt Collection Practices Act to three years, in addition to its application to all creditors and not just debt collectors. *See* Md. Code Ann., Com. Law §§ 14-201, *et seq.* On the other hand, as this Court has previously noted in *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp 2d 492, 511 (D. Md. 2004), the FDCA is a strict liability statute where the Maryland statute is

not.  Accordingly, Maryland's state law is not preempted by the federal Fair Debt Collection Practices Act.

In sum, as the master of her claims, Plaintiff has chosen only to assert causes of action under Maryland state law, and Defendants have not met their burden to show that removal is proper.  Therefore, this Court does not have federal question subject matter jurisdiction over Plaintiff's claims.

## II.     Diversity Jurisdiction

In order to satisfy diversity subject matter jurisdiction, the amount in controversy must exceed $75,000 and the controversy must be between citizens of different states.  28 U.S.C. § 1332(a).  A United States citizen is a citizen of the state where she has her domicile, which "requires physical presence, coupled with an intent to make the State a home." *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008).  A corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The citizenship of a Limited Liability Company ("LLC") "is determined by the citizenship of all of its members." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

The Court is satisfied that the parties are diverse, as Plaintiff is a citizen of Maryland, Defendant Fannie Mae is a citizen of the District of Columbia by statute, and Defendant Shellpoint, as an LLC, is a citizen of Delaware and New York.[3] (*See* Am. Compl ¶ 8, ECF No.

---

[3] Shellpoint's sole member is Shellpoint Partners, LLC, which itself has two members: NRM Acquisition, LLC ("NRM") and NRM Acquisition II, LLC ("NRM II"). (Notice of Removal ¶ 9.)  NRM and NRM II each bear one member, New Residential Mortgage, LLC, which itself bears a sole member, New Residential Investment Corporation.  (*Id.*)  New Residential Investment Corporation is a publicly traded

7; Notice of Removal ¶¶ 9, 10, ECF No. 1; Amber Knight Aff. ¶¶ 3-8, ECF No. 18-1.) Accordingly, the pertinent inquiry is whether "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs…." 28 U.S.C. § 1332(a)(1).

"In most cases, the 'sum claimed by the plaintiff controls the amount in controversy determination.'" *JTH Tax, Inc. v. Frasier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586 (1938)); *see also Farrell v. Macy's Retail Holdings, Inc.,* Case No. 15-1726, 645 F. App'x 246, 249 (4th Cir. Apr. 14, 2016). The amount in controversy must be pled "in good faith," and "both actual and punitive damages are considered." *Mansaray v. Mut. Benefit Ins. Co.*, No. PX-17-0098, 2017 WL 2778824, at *3 n. 5 (D. Md. June 26, 2017) (citations omitted); *Baron v. Directv, LLC*, No. JKB-16-3145, 2016 WL 6078263, at *1 (D. Md. Oct. 17, 2016) (citations omitted).  Further, "[i]f [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury,* 303 U.S. at 294; *Steers v. Samsung Elecs. Am., Inc.*, No. ELH-18-494, 2018 WL 4538611, at *2 (D. Md. Sept. 21, 2018) (quoting *Mary L. Martin, Ltd. v. State Auto Property and Cas. Ins. Co.*, 2013 WL 2181206, at *2 (D. Md. May 17, 2013)).

Here, there is no dispute that the amount in controversy in Count I, approximately $15.00 per class member, does not satisfy the amount-in-controversy requirement, as

---

corporation that is organized under the laws of Delaware and has a principal place of business in New York, New York. (*Id.*)  Accordingly, the Delaware and New York citizenship of New Residential Investment Corporation determines the citizenship of New Residential Mortgage, LLC, NRM I, NRM II, Shellpoint Partners, LLC, and Defendant Shellpoint, in turn.  While Plaintiffs assert that Defendants did not identify the citizenship of all members of Shellpoint at the time of removal, Defendants have ultimately borne their burden to show that the parties were completely diverse at the time of removal. (*See* Amber Knight Aff. ¶¶ 3-8, ECF No. 18-1.)

Defendants may not aggregate the claims of class members to satisfy the requirement. *See Ndzerre v. Liberty Power Corp., LLC*, 318 F. Supp. 3d 761, 764 (D. Md. 2018) ("Defendants invoking § 1332(a) cannot aggregate class members' damages to meet the $75,000 amount in controversy requirement."); (Am. Compl. ¶ 30, ECF No. 7.)  As to the declaratory judgment claim in Count II, however, Defendants contend that Plaintiff's claim "is the amount of interest, costs, fees, and other charges that will be accrued over the life of [Plaintiff's] Loan absent Plaintiff's requested declaratory relief, [which] exceeds $75,000." (Notice of Removal ¶ 13.)  Defendants assert that the amortization of Plaintiff's loan from the date of lawsuit filing through its maturity would result in $102,736.02 in future interest payments. (*Id.*)  For her part, Plaintiff maintains that her declaratory judgment action concerns only the limited time period from March, 2020 through May, 2020, during which Defendants allegedly took no action to correct their alleged violations of Maryland's Closed End Credit Law, Md. Code Ann., Com. Law §§ 12-001, *et seq.* ("CLEC"). (*See* Am. Compl. ¶¶ 34-36.)

The CLEC provides: "[i]if a credit grantor violates any provision of [CLEC] the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Com. Law. § 12-1018(a)(2).  This Court has previously held that a defendant may establish the requisite amount in controversy for a declaratory judgment action under the CLEC if he establishes by a preponderance of the evidence that the amount that the plaintiff owes "over and above the original principal amount of the loan" exceeds the jurisdictional amount. *Sayre v. Westlake Services, LLC*, Civil Action No. ELH-15-687, 2015 WL 4716207, at *9 (D. Md. Aug. 7, 2015).  In *Sayre*, this Court determined that the defendant had established the $5,000,000 threshold requirement for a class action

11

claim by a preponderance of the evidence based on defendant's affidavits regarding amounts owed by borrowers over and above the principal amount of their loans. *Id.* Plaintiff's complaint in *Sayre* sought a determination barring defendant from "collecting any amounts in excess of the original principal amount of each class member's loan." *Id.* at *1. Similarly here, Plaintiff seeks a determination that "as a result of their CLEC violations, Fannie Mae and Shellpoint may not collect or attempt to collect any interest, costs, fees, or other charges with respect to [her] loan." (Am. Compl. ¶ D.) Accordingly, Defendants have established by a preponderance of the evidence, through the affidavit of Shellpoint's authorized representative, that the amount Plaintiff owes over and above the principal amount of her loan is $102,736.02, an amount exceeding the jurisdictional prerequisite. (*See* Amber Knight Aff., ECF No. 18-1.) As a result, this Court has diversity jurisdiction over Count II of Plaintiff's Amended Complaint. However, as Count II seeks a declaratory judgment, this Court's diversity jurisdiction over that Count does not end the analysis in this matter.

### III. Declaratory Judgment

Although this Court has diversity jurisdiction over Plaintiff's declaratory judgment claim (Count II), it will exercise its discretion to decline such jurisdiction. *See Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 435 (D. Md. 2018) (citations omitted) ("[A] federal court has a measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction."). Under the Declaratory Judgment Act, federal courts have discretion to hear an action requesting declaratory judgment. 28 U.S.C. § 2201(a); *see also* James M. Wagstaffe, *Federal Civil Procedure Before Trial* §§ 6-V (2020) ("jurisdiction over declaratory relief cases is discretionary"); 7-VI ("Even if the requirements

for diversity jurisdiction exist, and the state law claim has merit, there may be reasons to decline jurisdiction, such as those relating to federal-state comity…"). The United States Court of Appeals for the Fourth Circuit has "held that district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-95 (1942) (discussing a district court's exercise of discretion when there is a state suit involving the same parties and state law issues). Declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co.*, 139 F.3d at 422 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

To determine whether to exercise jurisdiction over a declaratory judgment action, the Fourth Circuit has articulated the following four factors for consideration:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'; and (iv) whether the declaratory judgment action is being used merely as a device for 'procedural fencing' ….

*Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 824 (4th Cir. 2000) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (internal brackets omitted)).

Consideration of these factors weighs in favor of declining jurisdiction. Count I's class action claim under state law and Count II's declaratory judgment claim are inextricably tied to each other, as their base allegations are identical: that Defendants imposed unauthorized

13

charges on Plaintiff's and other Maryland citizens' loans, all in violation of Maryland law. Resolution of one of these Counts will undoubtedly have a decisive effect on the other. Moreover, Maryland courts have a strong interest in adjudicating such allegations over debt collection practices in the State of Maryland.

Alternatively, Defendants urge this Court to exercise its supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). This Court has considered factors of judicial economy, convenience, fairness, and comity. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). In the exercise of that discretion, this Court declines to exercise supplemental jurisdiction. Plaintiff does not assert any federal claims and the above considerations justify the remand of this case.

In sum, this Court finds that it does not have federal question jurisdiction, it declines to exercise its diversity jurisdiction over Plaintiff's declaratory judgment claim (Count II), and it declines to exercise its supplemental jurisdiction over Plaintiff's state law claims (Count I). This Court shall grant Plaintiff's Motion to Remand this case back to the Circuit Court for Anne Arundel County, Maryland and the pending Motion to Certify Class (ECF No. 9) will be denied as moot.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand (ECF No. 14) is GRANTED, and Plaintiff's Motion to Certify a Class and Subclass, Appoint Class Representatives and Class Counsel Pursuant to MD Rule 2-231 (ECF No. 9) is DENIED AS MOOT.  This case will be remanded to the Circuit Court for Anne Arundel County, Maryland.

A separate Order follows.


Dated: August 17, 2020

_____/s/_____
Richard D. Bennett
United States District Judge